The **WESTERN CASUALTY AND SURETY COMPANY**, Appellee,

v.

**GROLIER INCORPORATED and the Richards Company, Inc.,**
Appellants.

No. 73-1429.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1973.

Decided July 23, 1974.

Robert D. Mishne, Sioux City, Iowa, for appellants.

Philip Willson, Council Bluffs, Iowa, for appellee.

Before MEHAFFY, Chief Judge, MOORE,* and WEBSTER, Circuit Judges.

MOORE, Senior Circuit Judge:

This is an appeal by Grolier Incorporated and The Richards Company, Inc. (referred to collectively as "Grolier"), defendants in the court below, from judgments in the amount of $91,770.82 awarded against them and in favor of The Western Casualty and Surety Company (hereinafter "Western Casualty"). The theory of recovery was that Grolier owed Western Casualty a duty to indemnify it for a loss incurred under an insurance policy issued by it, insuring Arthur S. Bronston (hereinafter "Arthur") against liability arising out of an accident resulting from the ownership and operation of an automobile owned by Arthur. Because no such duty to indemnify can be derived from the facts of this case, we reverse the judgment of the District Court.

Grolier sells encyclopedias and other publications. Mitchell Bronston (hereinafter "Mitchell") was employed by Grolier as a field manager or supervisor over certain salesmen of Grolier's products. On June 25, 1968, Mitchell, while driving a car owned by and driven with the consent of Arthur (stated by the court, in an order on a motion to dismiss the complaint, to be the father of Mitchell), was involved in a one-car accident in Cherokee County, Iowa, injuring Peter E. Verstegen, a passenger and fellow Grolier employee.

At the time of the accident, Mitchell and Peter Verstegen were acting within the scope of their employment. Grolier, a self-insurer under Iowa's Workmen's Compensation Act, paid Verstegen $26,986.61 as a result of his injuries in accordance with the Act. Despite the fact that he received Workmen's Compensation payments from his employers, Verstegen was entitled to sue any third party who might under the law be liable to him. Verstegen sued both Arthur and Mitchell.

Mitchell's negligence was conceded to be a proximate cause of the accident, and Arthur as the owner was liable to Verstegen under the Iowa Owner-Liability Statute. Iowa Code § 321.493 (1962). In settlement of this suit, Western Casualty, as insurer of Arthur, paid $90,000 to Verstegen and obtained his release of both Arthur and Mitchell. This settlement has been stipulated to be fair and reasonable. Western Casualty also paid court costs in the amount of $114.84 and incurred attorneys' fees in the amount of $1,520.00 and expenses of $135.98. Western Casualty then brought the present action, as subrogee of Arthur, seeking indemnity from Grolier for the sums it expended in settling Verstegen's suit and for costs, attorneys' fees and expenses, a total of $91,770.82.

Grolier filed a third-party action against Mitchell in this action and was awarded judgment against him in a similar amount.

Western Casualty, as subrogee of Arthur, having paid $91,770.82 to Verstegen then brought this action against Grolier. The complaint alleged an agreement between Grolier and Mitchell under which Mitchell was to furnish an

* LEONARD P. MOORE, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

automobile to transport Grolier's employees to areas selected by Grolier for the sale of its products; that Arthur agreed to furnish the car for this purpose; that Verstegen sued Arthur and Mitchell for his injuries sustained in the accident; that Mitchell's negligence was the proximate cause of the accident, which negligence was imputable to Grolier; that Arthur was liable to Verstegen by reason of the Iowa Consent Statute § 321.493 Iowa Code (1962); that Western Casualty paid $91,770.82 in settlement, which settlement was fair and reasonable; and that Western Casualty made a demand for indemnity from Grolier which was refused.

Grolier moved to dismiss the complaint on the ground that it failed to state a cause of action against it. The District Court denied the motion on the ground that Grolier's liability is that of a master under the doctrine of respondeat superior; that Grolier's negligence was primary, the car owner's negligence secondary and that the owner was not *in pari delicto* with Grolier.

When the case came to trial it was submitted largely upon the pre-trial order and facts stipulated therein.

The District Court found as an underlying fact that Arthur was liable to Verstegen under the Iowa Consent Statute, § 321.493.[1] However, the Court concluded that Arthur (Western Casualty as Arthur's subrogee) was entitled to indemnity from Grolier because Grolier was Mitchell's employer; that Mitchell was driving a car owned by and with the consent of Arthur; that an accident occurred in which Verstegen, a fellow employee, was injured; that Mitchell and Verstegen were acting within the scope of their employment; that Mitchell's negligence was the proximate cause of

the accident; that Grolier was insured under the Iowa Workmen's Compensation Act and paid Verstegen $26,986.61 thereunder; that Verstegen brought a suit against Arthur and Mitchell; that Arthur had an automobile liability insurance policy issued by Western Casualty; that Western Casualty settled the suit for a total of $91,770.82, which sum was fair and reasonable; that Western Casualty had tendered the defense to Grolier which was refused; and that Western Casualty had demanded indemnity from Grolier, which likewise was refused.

Appellants take issue with the conclusions reached below. They argue to this Court that Iowa's Workmen's Compensation Statute limits the liability of the employer.[2] While an employee who is covered by the Statute may recover for his injuries according to the schedule provided, he may not independently initiate a cause of action against his employer. Likewise, according to appellants, an employee cannot indirectly recover additional monies from his employer by suing a responsible third party who can, in turn, claim indemnity from the employer.

As authority for this proposition, appellants rely on Great Northern Railway Co. v. Bartlett & Co., 298 F.2d 90 (8th Cir. 1962). Great Northern was in the business of renting railroad cars to commercial users. Bartlett was one of its lessees. While loading a car leased to Bartlett by Great Northern, one of Bartlett's employees was injured. He received a Workmen's Compensation award from his employer and then sued Great Northern as a negligent third party because he claimed that the car supplied by Great Northern had been equipped with defective handbrakes.

1. 321.493 Liability for damages. In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

2. Section 85.20 of the Act provides that:
The rights and remedies provided in this

chapter for an employee on account of injury shall be exclusive of all other rights and remedies of such employee, his personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury.

The employee prevailed in his suit. Great Northern then sought contribution or indemnity from Bartlett on the ground that Bartlett's failure to inspect the car before putting it to use made it, at the very least, a joint tortfeasor. Both contribution and indemnity were denied. This Court held that it was necessary for the party seeking indemnity to show an *independent duty of indemnity* running to it from the employer before the ultimate liability could be shifted and that, under the circumstances, no such duty could be found.

The District Court largely ignored the implications of *Great Northern* and instead based its memorandum decision on the authority it derived from seven different opinions which it cites but does not discuss.

In support of its judgment that Grolier owed Arthur indemnification for his settlement with Verstegen, the court first cites Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501 (1951). The facts in that case disclose that when one of Greyhound's buses suffered mechanical difficulty and was unable to make a scheduled trip for which tickets had already been sold, Greyhound leased a bus and driver from Sioux Lines Inc. Due to the negligence of the driver, an accident occurred and one of the passengers sued Greyhound which, as the carrier of record, was responsible. Greyhound conceded liability but sought indemnification from Sioux Lines. The Iowa Supreme Court found that Greyhound was indemnified by Sioux Lines, the owner of the bus.

Millard v. Baker, 76 S.D. 529, 81 N.W.2d 892 (1957), a case similar to *Rozmajzl* in many ways, was also relied upon by the District Court. In that case defendant Baker was in the business of leasing commercial vehicles and drivers for those vehicles. Baker leased a truck and driver to Wurnig. Through the negligence of the driver, plaintiff Millard was injured. The Supreme Court of South Dakota held that Baker's liability, premised on an owner-liability statute, could be shifted completely to Wurnig, the lessee.

Although both *Rozmajzl* and *Millard* involved the bailment of motor vehicles, neither was presented within a framework which compelled the need to cope with the policies of Workmen's Compensation legislation. Both courts relied on the finding that one of the defendants *was primarily liable* to the injured plaintiff but, as *Great Northern* has established, relative negligence is inoperative as a basis for indemnity where the policies of Workmen's Compensation must be taken into account and an independent duty of indemnification must be shown.

In a slightly different vein, the court below relied on Iowa Power & Light Company v. Abild Construction Company, 259 Iowa 314, 144 N.W.2d 303 1966). Abild had been engaged by the Bates-Couch Terminal Elevator Company to construct a grain storage building. While working on the project, Visser, an Abild employee, came into contact with an Iowa Power & Light Company (Ipalco) power line. He was severely injured. Visser collected unemployment compensation from his employer and then prevailed against Ipalco in an independent suit for negligence. The court found a basis for Ipalco's subsequent claim of indemnity from Abild. Abild had failed, as per its express agreement with Ipalco, to inform Ipalco that it was working near the latter's power lines so that proper steps could be taken to ensure against an electrical mishap. Likewise, the District Court cites Peters v. Lyons, 168 N.W.2d 759 (Iowa 1969). Mrs. Lyons, the defendant, owned a rather large dog for which she had bought a leash from the S.S. Kresge Company. The salesman assured her, at the time of the sale, that the leash would be equal to its intended task. Unfortunately, the leash proved defective. The dog broke away from its restraint and

attacked plaintiff Lyons, causing him serious injury. The Supreme Court of Iowa held that the salesman's assurances constituted a warranty and found a duty of indemnity based upon breach of that warranty.

In both *Abild* and *Peters* indemnity was predicated on an independent duty and in that sense they are relevant to the case at bar. However, the duty in each case was derived from the express language of the agreements reached between the parties. There is no evidence, not even an allegation, of an analogous express agreement between Grolier and Arthur, and thus the authority of *Abild* and *Peters* cannot be stretched to cover the facts of the instant case.

The District Court also invoked the holding of the Supreme Court of Iowa in Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (1962). In that case Sioux City Dressed Pork made a contract with one Langley whereby Langley agreed to clean Sioux City's slaughtering and refrigerating equipment so that Sioux City might be in compliance with federal sanitation regulations. One of Langley's employees began to clean Sioux City's machinery while it was still in operation. The employee was injured as a result of his indiscretion. He received Workmen's Compensation benefits from Langley and then sued Sioux City alleging that it had failed to instruct as to proper cleaning procedures. Sioux City was found negligent and sought indemnity from Langley. Langley was required to indemnify Sioux City because the court found that Langley owed it an *implied duty to perform all work in a safe manner.*

While it is true that Langley's liability was based on an implied independent duty, there is no evidence in the record to show that Grolier owed Arthur any similar duty to perform its work in a safe manner. Unlike the Sioux City Dressed Pork Company, Arthur did not hire Grolier. Grolier owed Arthur only

the general duty that every member of society owes to every other member—the duty not to harm him through tortious acts. Such a general duty does not support a right of indemnity in a case where the would-be indemnitor is an "employer" covered by the Workmen's Compensation law.

Of all the cases cited by the District Court, the only two which contain colorable authority for the case at bar are Hertz Corporation v. Ralph M. Parsons Co., 419 F.2d 783 (5th Cir. 1969), and Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355 (1954).

In *Hertz*, Nugent, an employee of the Parsons Company, while on company business, rented a car from Hertz using a credit card supplied by his employer who later paid the rental charge. While driving the rented car, Nugent negligently caused an accident. As the owner of the automobile, Hertz was found liable. Hertz then sued Parsons for indemnification and won.

In *Lunderberg*, the plaintiff had taken her automobile to a garage for its 2,000 mile "checkup." After it had been serviced, two of the garage employees took the car out for a road test. During the course of this test, the employee who was driving negligently caused an accident which injured the employee who was riding as a passenger. The passenger-employee received Workmen's Compensation from the garage which employed him and then sued Mrs. Lunderberg under a Minnesota statute (much like the one currently in force in Iowa) which made the owner of an automobile liable for any damage caused by it as long as the automobile was being driven with the owner's consent. When Mrs. Lunderberg was found liable she sued the garage for indemnity. The Supreme Court of Minnesota held that Mrs. Lunderberg had a right of indemnity from the garage because, as the bailee of her property, it was liable not only for damages resulting to the bailor's property but also for damages resulting to the

bailor due to the negligence of the bailee. *Lunderberg, supra,* 63 N.W.2d at 360.

In both *Lunderberg* and *Hertz,* indemnity was implied from an independent duty running from the bailee of the motor vehicle to the lessee-owner. Fundamental to a resolution of liability in the present case is a factual determination of the relationship, if any, between Grolier and Arthur. If Grolier leased the vehicle from Arthur, indemnity might well be warranted. The facts in this case, however, simply do not support the existence of such a relationship. Except for an admission in the pleadings that Arthur agreed to furnish Mitchell with a car for use in the scope of his employment with Grolier and a denial by Grolier that it required Mitchell as a condition of his employment to furnish transportation for Grolier's employees, there is nothing in the record to indicate that Grolier had any knowledge that Mitchell had acquired the car from Arthur, that Grolier had authorized any such acquisition or that Mitchell's position gave him either implied or apparent authority to obtain a car from his father. Grolier has no independent duty to Arthur merely because it might have been a beneficiary of some agreement between the father and son.

In order for Arthur to have a right of indemnity against Grolier, the record must disclose an independent duty of indemnification.

Because appellee has been unable to point to any relationship between Grolier and Arthur from which a duty to indemnify might arise and because this court is unable to discern any such relationship from the record in this case, we find that Grolier had no duty to indemnify Arthur. We therefore reverse the recovery awarded by the District Court to the Western Casualty and Surety Company, and dismiss the complaint with costs.