534 F.2d 775
 Richard Henry HYSELL and Barbara Hysell, Appellees,
v.
IOWA PUBLIC SERVICE COMPANY, Appellant, and The City of
Sioux City, Iowa, Appellee,
v.
Thurman SIMPSON and Irving F. Jensen Company, Appellees.
 No. 75-1414.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1975.
Decided April 12, 1976.
As Amended on Denial of Rehearing and Rehearing En Banc May 28, 1976.
 
 Frank Jacobs, Jacobs, Gaul, Nymann & Green, Sioux City, Iowa, for appellant; Dewie J. Gaul, Sioux City, Iowa, on brief.
 Sam W. Masten, Canton, S.D., for appellees, Richard Henry and Barbara Hysell; William E. Kunze, Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, Iowa, on brief.
 Maurice B. Nieland, Kindig, Beebe, McCluhan, Rawlings & Nieland, Sioux City, Iowa, for appellee, Simpson and Jensen; Robert E. Beebe, Sioux City, Iowa, on brief.
 Patrick C. McCormick, Sioux City, Iowa, for appellee, City of Sioux City, Iowa.
 Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 Richard and Barbara Hysell, husband and wife, instituted this diversity action for the recovery of damages for personal injuries from the Iowa Public Service Company (IPS) and the City of Sioux City, Iowa.[1] IPS and Sioux City joined the Irving F. Jensen Company and Thurman Simpson, an employee of Jensen Company, as third-party defendants for indemnity or contribution. Sioux City also filed a cross-claim against IPS seeking contractual indemnification.
 
 The principal facts are undisputed:
 
 2
 Richard Hysell was employed by Jensen Company as a grading and paving laborer on the construction of city streets. On May 18, 1973, Hysell and other Jensen Company employees were working in Sioux City, Iowa, on the completion of Murray Street, an unplatted road which intersected Harbor Drive from the west. IPS owned an uninsulated power line transmitting 12,420 volts of electric current that stood at a maximum height of nineteen and one-half feet above and twelve to fifteen feet within the western boundary of the right-of-way of Harbor Drive in the area of its intersection with Murray Street. No signs or other devices warning of possible danger from the line were placed in the area.
 
 
 3
 At approximately 5:15 p.m., Thurman Simpson was operating a boom truck used in the transportation and placement of street paving forms. The maximum height of the boom in normal operating position was nearly twenty-one feet. As a form was being unloaded along Murray Street near the intersection with Harbor Drive, the boom came into contact with the IPS power line. Hysell reached into a compartment of the boom truck at the same time the contact with the line occurred, and he received a severe electric shock and burns, resulting in the substantial injuries which are the subject of this suit.
 
 
 4
 Various officers and employees of IPS knew that construction was increasing in the area of the intersection of Harbor Drive and Murray Street and that the particular grading and paving project involved here had been undertaken. Sioux City, though not a party to the contract under which the project was performed, frequently sent inspectors to the construction area to assure conformity with city specifications and had paid certain of the costs of paving Harbor Drive.
 
 
 5
 At the time of the accident, a franchise agreement existed between Sioux City and IPS for the supply of electricity and natural gas to city residents. The agreement contained language from a Sioux City ordinance which prohibited the maintenance of transmission lines at any height less than twenty-five feet from the surface of the street. A second city ordinance, not mentioned in the agreement, established the same requirement. Sioux City made no attempt to enforce the minimum height provision, and IPS made no inspections of the line to conform its position to the requirement. The franchise agreement also provided that IPS would indemnify Sioux City for any loss or damage occurring through any "excavation, structure, or device" placed by IPS within the city limits. No contract existed between Jensen Company and IPS or Sioux City with regard to the street grading and paving project.
 
 
 6
 The District Court, sitting without a jury, found that, at the time of the accident, the electric line was negligently constructed and maintained by IPS and that this negligence was a proximate cause of the damages; that the electric line was a nuisance in Harbor Drive and a proximate cause of the damages; that Sioux City failed to abate the nuisance and negligently failed to enforce its electric line height ordinances and that this conduct was a proximate cause of the damages; that the boom came into contact with the transmission line through the negligence of Simpson in failing to maintain a proper lookout; and that Richard Hysell was not contributorily negligent. The District Court awarded Richard Hysell $1,500,000 in damages for his personal injuries, past and future pain and suffering, past and future medical expenses, past and future loss of earnings, and diminution of services and companionship as a husband. It further found that Barbara Hysell had incurred past and future loss of her husband's services, companionship, and consortium as a proximate result of the accident, and awarded her $200,000 in damages. The liability was assessed against IPS and Sioux City; and IPS was held to be required to indemnify Sioux City pursuant to the franchise agreement. IPS and Sioux City were held to have failed to prove entitlement to indemnity or contribution from Jensen Company or Simpson, or that the negligence of these parties was an intervening cause.
 
 
 7
 IPS appeals, contending (1) that the evidence was insufficient to establish its negligence; (2) that any negligence on its part was not a proximate cause of the accident; (3) that it was entitled to indemnity or contribution from Jensen Company and Simpson; (4) that Sioux City was not contractually entitled to indemnity; and (5) that the award of $1,500,000 to Richard Hysell was unsupported by the facts and excessive.[2]
 
 I.
 IPS Negligence
 
 8
 The District Court found that IPS had negligently constructed and maintained the electric transmission line over Harbor Drive. We review this conclusion under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). In re Flowers, 526 F.2d 242, 244 (8th Cir. 1975); Chicago & N.W. Ry. v. Minnesota Transfer Ry., 371 F.2d 129, 131 (8th Cir. 1967). See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2590 (1971).
 
 
 9
 IPS does not dispute that its transmission line at Harbor Drive was strung at a maximum height of nineteen and one-half feet above the ground at the area of the intersection of Harbor Drive and Murray Street. Sioux City Ordinance § 17.04.070 provides in part:
 
 
 10
 All * * * electric wires * * * shall not be strung along * * * the streets * * * of the City at an elevation of less than twenty-five feet above the surface of the street * * * whereon they may be erected * * *.
 
 
 11
 Sioux City Ordinance § 12.04.110 similarly provides:
 
 
 12
 (N)o wire, cable, cross-arm or other device used in the transmission of electric current shall be maintained at any height less than 25 feet from the surface of the street in the City * * *.
 
 
 13
 The latter provision was also reproduced as part of the franchise agreement between IPS and Sioux City.
 
 
 14
 Under Iowa law, the question of whether violation of such city ordinances constitutes negligence per se or merely prima facie evidence of negligence is decided in light of the purpose and intent of the provisions. Jorgensen v. Horton, 206 N.W.2d 100, 102 (Iowa 1973); Montgomery v. Engel,179 N.W.2d 478, 483-84 (Iowa 1970). See Lamasters v. Snodgrass,248 Iowa 1377, 1383-85, 85 N.W.2d 622, 625-27 (1957). See generally W. Prosser, Handbook of the Law of Torts § 36 (4th ed. 1971). The District Court apparently construed the purpose and intent of these ordinances to require a finding of negligence per se for their violation. The District Court's interpretation of these local laws is entitled to great deference, Ideal Plumbing Co. v. Benco, Inc., 529 F.2d 972, 979 (8th Cir. 1976); Carson v. National Bank of Commerce Trust and Savings, 501 F.2d 1082, 1083 (8th Cir. 1974), and cannot be said to be in error.
 
 
 15
 IPS contends, however, that since the transmission line was not directly above the paved surface of Harbor Drive, the proper measure of its elevation under these ordinances would be the length of a straight line hypothetically drawn from the edge of the traveled surface of Harbor Drive to the line. A triangulation prepared for this purpose and entered into evidence indicated that the distance along such a line would be twenty-six feet. IPS thus asserts that since the transmission line is thereby shown never to extend within twenty-five feet from the surface of the street, there was no proof that it was negligent or otherwise violative of the ordinances.
 
 
 16
 This is not a realistic interpretation of the ordinances. The provisions are not addressed merely to distances, but speak in terms of elevation and height. The lines are not to be placed twenty-five feet away from the surfaces of streets, but twenty-five feet above such surfaces. Moreover, IPS incorrectly perceives the surface of a street to include only the paved or traveled portions. Sioux City Ordinance § 10.04.440 defines "street" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Cf. Hal v. Town of Keota, 248 Iowa 131, 135, 79 N.W.2d 784, 786 (1956). Since the transmission line was clearly within the boundaries of Harbor Drive, the IPS triangulation theory, if viable, would produce a measurement which was violative of the ordinances.
 
 
 17
 The finding of negligent construction and maintenance of the wires by IPS thus cannot be said to be clearly erroneous.[3]
 
 II.
 Proximate Cause
 
 18
 In order for the negligence of IPS to be actionable, it must have been a proximate cause of the injury. As defined by the Supreme Court of Iowa:
 
 
 19
 Proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. It is a primary moving cause or predominating cause from which the injury flows as a natural, direct and immediate consequence and without which it would not have occurred. It is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen, and it is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong.
 
 
 20
 Cronk v. Iowa Power and Light Co., 258 Iowa 603, 613, 138 N.W.2d 843, 848-49 (1965). See Schnebly v. Baker, 217 N.W.2d 708, 728-29 (Iowa 1974); Christianson v. Kramer, 255 Iowa 239, 249-50, 122 N.W.2d 283, 289 (1963); Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, 313 (1959); Daly v. Illinois Central R.R., 248 Iowa 758, 761, 80 N.W.2d 335, 337 (1957); McClure v. Richard, 225 Iowa 949, 954, 282 N.W. 312, 315 (1938).
 
 
 21
 IPS contends that its negligent construction and maintenance of the transmission wires could not have been a proximate cause of the injuries to the Hysells because (1) the negligence of Simpson in failing to maintain a proper lookout was the proximate cause of the injuries or, in the alternative, (2) the negligence of Simpson was an intervening cause which absolves IPS of any causal connection to the injuries. The District Court found Simpson's actions to constitute negligence, but, apparently finding no proximate causation, did not impose liability. Proximate cause is a question of fact, see Bryant v. Rankin, 468 F.2d 510, 515 (8th Cir. 1972); Walton v. Eckhart, 354 F.2d 35, 37-38 (8th Cir. 1965), and our review is thus limited to the "clearly erroneous" standard of Fed.R.Civ.P. 52(a).
 
 
 22
 A review of the evidence indicates that the District Court's apparent finding that the negligence of Simpson was not a proximate cause of the injuries is clearly erroneous. The failure of Simpson to maintain a proper lookout and the resultant contact of the boom with the transmission line were acts without which the present injuries would not have occurred, and the injuries were the immediate and natural result of this negligence.
 
 
 23
 A finding that the negligence of Simpson was a proximate cause of the harm does not, however, preclude the negligence of IPS from also operating as a proximate cause. See Klunenberg v. Rottinghaus, 256 Iowa 731, 736-37, 129 N.W.2d 68, 71 (1964); Restatement (Second) of Torts § 439 (1965). Nor does its location in the sequence of events resulting in the injuries necessarily require that it be found sufficient to operate as an intervening cause.
 
 
 24
 An intervening cause is "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed. It primarily refers to some act or agency for which a defendant is not responsible." Cronk v. Iowa Power and Light Co., supra, 258 Iowa at 613, 138 N.W.2d at 849. See Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 1386-87, 15 N.W.2d 286, 289 (1944); Restatement (Second) of Torts §§ 441 and 442B (1965). Yet as the Iowa Supreme Court recognized in Webber v. E. K. Larimer Hardware Co., supra, 234 Iowa at 1387, 15 N.W.2d at 289:
 
 
 25
 Even an intervening agency for which a defendant is not responsible does not necessarily relieve him from liability for his negligent act. * * * If the original wrong concurs with the intervening cause and both act proximately in producing the injury, both as a rule are proximate causes. * * *
 
 
 26
 Further, where a subsequent act is relied upon as an independent intervening cause, it will not have that effect if it or a similar act might reasonably have been foreseen. * * * (citations omitted)
 
 
 27
 See Leaders v. Dreher, 169 N.W.2d 570, 575-76 (Iowa 1969); Klunenberg v. Rottinghaus, supra, 256 Iowa at 737-38, 129 N.W.2d at 71; Blessing v. Welding, 226 Iowa 1178, 1182-84, 286 N.W. 436, 439-40 (1939).
 
 
 28
 The negligence of Simpson could not operate as an intervening cause since it alone would not have produced the injuries and since, in light of the franchise agreement and the city ordinances regarding height requirements, contact with the lines at heights under twenty-five feet was an act reasonably foreseeable to IPS. See Cronk v. Iowa Power and Light Co., supra, 258 Iowa at 613-14, 138 N.W.2d at 849. The original wrong of IPS here concurred with the negligence of Simpson in producing the injuries, and both must be considered concurrent proximate causes of the injuries.
 
 
 29
 We thus hold that the District Court properly found that the negligence of IPS was a proximate cause of the accident but erred in finding that the negligence of Simpson was not also a concurrent proximate cause.
 
 III.
 Indemnity and Contribution
 
 30
 IPS contends that the District Court erred in (1) failing to grant it indemnity or contribution from Jensen Company; (2) failing to grant indemnity or contribution from Thurman Simpson; and (3) granting indemnity by IPS to Sioux City.Jensen Company
 
 A.
 
 31
 Iowa law recognizes several theories on which indemnity may be permitted: (1) express contract; (2) vicarious liability; (3) breach of an independent duty between the indemnitor and the indemnitee; and (4) the primary or "active" tortious conduct of the indemnitor as compared to the secondary or "passive" tortious conduct of the indemnitee. See Mayhew v. Iowa-Illinois Telephone Co., 279 F.Supp. 401, 403 (S.D.Iowa 1967); Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 322-23, 144 N.W.2d 303, 308 (1966). See generally D. Furnish, Distributing Tort Liability: Contribution and Indemnity in Iowa, 52 Iowa L.Rev. 31, 34-35 (1966). Of these four grounds for indemnification, the first three are based upon a relationship existing between indemnitor and indemnitee, while the fourth ground is based solely on a common liability arising from the concurrent negligence of these parties. A claim for indemnity on this latter basis is subject to Section 85.20 of the Iowa Workmen's Compensation Act, Code of Iowa § 85.20 (1973), which, at the time of the injuries at issue, provided:
 
 
 32
 The rights and remedies provided in (the Iowa Workmen's Compensation Act) for an employee on account of injury shall be exclusive of all other rights and remedies of such employee, his personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury.
 
 
 33
 The liability of Jensen Company to Hysell as its employee is governed by the Iowa Workmen's Compensation Act and is not dependent upon negligence. Jensen Company would thus have a special defense under Section 85.20 to an action by the injured employee, and this defense is equally available to a claim for indemnity by IPS, which is liable to Hysell for the same injuries. See Mayhew v. Iowa-Illinois Telephone Co., supra, 279 F.Supp. at 403, 405; Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 322-24, 144 N.W.2d at 308-09; Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 850-55, 118 N.W.2d 559, 562-65 (1962). Cf. Blunt v. Brown, 225 F.Supp. 326 (S.D.Iowa 1963). Thus, if IPS is entitled to indemnity from Jensen Company, such indemnity must be based on some relationship between these parties in addition to the fact of negligence and proximate cause of Hysell's injuries.[4]
 
 
 34
 In discussing the scope of the applicability of Section 85.20, the Iowa Supreme Court has stated: "Indemnity is permissible when the right arises out of a separate duty due the third party from the employer." Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 323, 144 N.W.2d at 309. See Western Casualty and Surety Co. v. Grolier, Inc., 501 F.2d 434, 437 (8th Cir. 1974); Great Northern Ry. v. Bartlett & Co., Grain, 298 F.2d 90, 95 (8th Cir. 1962); Fairfield Engineering Co. v. Winger Construction Co., 309 F.Supp. 64, 66 (S.D.Iowa 1969).
 
 
 35
 IPS contends that Jensen Company, through its employees, breached such an independent duty to IPS not to come in contact with the transmission line and that indemnity should be awarded on the basis of this breach. In order for an independent duty to establish a basis for indemnity against an employer providing benefits under the Iowa Workmen's Compensation Act, however, the duty must be of a specific, defined nature. As this Court stated in Western Casualty and Surety Co. v. Grolier, Inc., supra, 501 F.2d at 438:
 
 
 36
 (The employer) owed (the third party) only the general duty that every member of society owes to every other member the duty not to harm him through tortious acts. Such a general duty does not support a right of indemnity in a case where the would-be indemnitor is an "employer" covered by the Workmen's Compensation law.
 
 
 37
 See Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 326-27, 144 N.W.2d at 310-11.
 
 
 38
 IPS did not prove that Jensen Company owed it any duty other than this general duty of care; nor was there any contractual relation between IPS and Jensen Company from which an indemnification agreement could be found. The District Court thus properly denied the claim of indemnity against Jensen Company.
 
 B.
 
 39
 Unlike certain states, Iowa recognizes an action for contribution between concurrent tortfeasors where they are commonly liable to the injured party for the same damages and there is no intentional wrong, moral turpitude, or concert of action. See Iowa Power and Light Co. v. Abild Construction Co.,supra, 259 Iowa at 318-19, 144 N.W.2d at 306; Best v. Yerkes, 247 Iowa 800, 810, 77 N.W.2d 23, 29 (1956). In the absence of a common liability, however, no right of contribution exists. Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 319, 144 N.W.2d at 306. See Chicago R.I. & Pac. R.R. v. Chicago & N.W. Ry., 280 F.2d 110, 115 (8th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961).
 
 
 40
 Since the claims of the Hysells against Jensen Company are subject to the exclusive remedy of Section 85.20 of the Iowa Workmen's Compensation Act, Jensen Company has no liability common with that of IPS. See Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 319, 144 N.W.2d at 306. The District Court therefore properly denied IPS contribution from Jensen Company.
 
 Thurman Simpson
 A.
 
 41
 At early common law, the "fellow servant" rule would have precluded an action in tort between the Hysells and Simpson arising from Hysell's injuries and thus would have provided no common liability between IPS and Simpson. See W. Prosser, Handbook of the Law of Torts § 80, at 528 (4th ed. 1971). In Craven v. Oggero, 213 N.W.2d 678, 681-83 (Iowa 1973), the Supreme Court of Iowa held that a servant could in fact be held liable for injuries negligently inflicted on a fellow servant, even if occurring in the transaction of the master's business. Simpson thus cannot assert his status as a co-employee of Hysell as a special defense to indemnity or contribution. Moreover, the Iowa Supreme Court held in Price v. King, 259 Iowa 921, 924-27, 146 N.W.2d 328, 330-31 (1966), that the statutory immunity of the employer under Section 85.20 of the Iowa Workmen's Compensation Act does not extend to employees. See Craven v. Oggero, supra, 213 N.W.2d at 680-81.
 
 
 42
 Simpson, however, notes that an amendment to Section 85.20, effective July 1, 1974 (approximately one year after the occurrence of the injuries in question), requires that an employee who seeks to recover from a co-employee must show that the injury resulted from "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Acts 1974 (65 G.A.), ch. 1111, § 1. This amendment, Simpson contends, should apply retroactively to relieve him of liability for indemnity or contribution since there was no showing of gross neglect and, hence, no common liability for the injuries to Hysell.
 
 
 43
 The relevant rule of statutory construction is stated in Code of Iowa § 4.5 (1975), which provides: "A statute is presumed to be prospective in its operation unless expressly made retrospective." The amendment to Section 85.20 contains no specific provision or implication as to the scope of its applicability. Therefore, since Section 4.5 requires a presumption of prospective application and since the Iowa Supreme Court has evolved a strict rule of construction against retrospective operation, see, e.g., City of Monticello v. Adams, 200 N.W.2d 522, 525 (Iowa 1972), the amendment must, in the absence of contrary indications, be held to have only prospective application.[5] It therefore does not operate to preclude the common liability of Simpson for the damages caused by his concurrent negligence.
 
 
 44
 The first basis of the IPS claim for indemnity against Simpson is that its own negligence was merely "passive" whereas Simpson's negligence was " active". This claim must fail because the conduct of IPS was itself active negligence:
 
 
 45
 It was (the power company's) duty to construct, locate and guard its high voltage transmission lines in such a manner as not to be dangerous to the public and those, to its knowledge, working near and about them, and this duty could not be shifted to (a construction worker). Its failure to properly discharge this duty * * * constituted, in our judgment, active and not passive negligence.
 
 
 46
 Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 324-25, 144 N.W.2d at 309, quoting Public Service Electric and Gas Co. v. Waldroup, 38 N.J.Super. 419, 119 A.2d 172, 181 (1955). Cf. Cronk v. Iowa Power and Light Co., supra, 258 Iowa at 611-12, 138 N.W.2d at 847-48.
 
 
 47
 IPS further contends that Simpson breached an independent duty to IPS not to come in contact with the transmission wire and that indemnity should be awarded on the basis of this breach. IPS did not, however, submit any evidence of any duty owed to it by Simpson other than the general duty of reasonable care owed all members of the public. A breach of such a duty is insufficient to establish entitlement to indemnification under Iowa law. See Iowa Power and Light Co. v. Abild Construction Co., supra, 259 Iowa at 326-27, 144 N.W.2d at 310-11.
 
 
 48
 The District Court therefore properly denied the claim of indemnity against Simpson.
 
 B.
 
 49
 The evidence did show, as we hold here, that the negligence of Simpson was a proximate cause of the injury. In the absence of a defense under Section 85.20, therefore, Simpson has a common liability with IPS resulting from his concurrent negligence. The District Court thus erred in denying contribution from Simpson to IPS.
 
 Sioux City
 
 50
 IPS additionally contends that the District Court erred in holding that Sioux City was entitled to contractual indemnity from IPS for its liability to the Hysells.
 
 
 51
 At the time of the accident, a franchise agreement existed between IPS and Sioux City by which IPS was granted the right to supply electricity and natural gas to residents of the city. This agreement provides in part:
 
 
 52
 (IPS) shall be liable for and shall indemnify the said City for any loss of damage occasioned to persons or property which may occur through any excavation, structure, or device of any kind, made, placed or permitted to exist by the said grantee in any street, alley or public ground within the City of Sioux City, Iowa.
 
 
 53
 The District Court concluded that this provision enabled Sioux City to recover indemnity from IPS.
 
 
 54
 Under Iowa law, a party may contract for indemnity from the consequences of its own negligence. Northern Natural Gas Co. v. Roth Packing Co., 323 F.2d 922, 927-29 (8th Cir. 1963); Mayhew v. Iowa-Illinois Telephone Co., supra, 279 F.Supp. at 404; Fire Association of Philadelphia v. Allis Chalmers Manufacturing Co., 129 F.Supp. 335, 350-52 (N.D.Iowa 1955). If a contractual provision for indemnity is present, liability is controlled by this provision, and not by the issue of whether the tortious conduct of the respective parties was "active" or "passive", primary or secondary. Northern Natural Gas Co. v. Roth Packing Co., supra, 323 F.2d at 929. See Becker v. Black and Veatch Consulting Engineers, 509 F.2d 42, 45 (8th Cir. 1974).
 
 
 55
 The indemnity clause expresses the right of Sioux City to indemnity from IPS in a clear and unequivocal manner. IPS contends, however, that the clause is insufficiently specific because it fails to state explicitly that IPS will be required to indemnify the City for damages resulting from the tortious conduct of the City.
 
 
 56
 Under Iowa law, a contract need not expressly specify that it will operate to indemnify a party for its own negligence if the clear intent of the language is to provide such indemnification. Northern Natural Gas Co. v. Roth Packing Co., supra, 323 F.2d at 925-27; Epley v. S. Patti Construction Co.,228 F.Supp. 1, 3 (N.D.Iowa 1964), rev'd on other grounds sub nom. Carstens Plumbing & Heating Co. v. Epley, 342 F.2d 830 (8th Cir. 1965). See Weik v. Ace Rents, Inc., 249 Iowa 510, 514-15, 87 N.W.2d 314, 317-18 (1958). Moreover, we are not presented here with a situation in which the liability resulted solely from the tortious conduct of the indemnitee. Thus, the language of the indemnity clause must be assessed on the basis of whether it was intended to apply in situations where the City was concurrently negligent.
 
 
 57
 The clause contains the IPS agreement to indemnify the City for any liability caused by the structures or devices of IPS. The District Court found, and we affirm this finding here, that the negligent construction and maintenance of the transmission wires by IPS was a proximate cause of the injury to the Hysells. Under the indemnity clause of the contract, this means that the City should be indemnified, regardless of its own tortious conduct. To limit the applicability of the provision to those cases only in which IPS was the sole party negligent would be to construe the language as meaningless, since even without the provision IPS would be liable to Sioux City for any costs it would be required to pay because of the sole negligence of IPS. As stated in Epley v. S. Patti Construction Co., supra, 228 F.Supp. at 4: "If it was not intended to cover the situation where (the indemnitee) was concurrently negligent, then the contract in this respect would be reduced to being almost meaningless." See Northern Natural Gas Co. v. Roth Packing Co., supra, 323 F.2d at 926-27; Mayhew v. Iowa-Illinois Telephone Co., supra, 279 F.Supp. at 404.
 
 
 58
 The District Court thus did not err in finding that Sioux City was contractually entitled to indemnification from IPS.[6]IV.
 
 Damages
 
 59
 IPS contends that the award of $1,500,000 damages to Richard Hysell is unsupported by the facts and erroneously excessive.[7]
 
 
 60
 The amount of damages entered as the judgment in a non-jury case is within the ambit of the discretionary powers of the District Court,[8] although the standard of review is ultimately that of the "clearly erroneous" concept of Fed.R.Civ.P. 52(a). Zatina v. Greyhound Lines, Inc., 442 F.2d 238, 242-43 (8th Cir. 1971). See Snodgrass v. Nelson, 503 F.2d 94, 96 (8th Cir. 1974); Carter Electric Co. v. S. S. Silberblatt, Inc., 448 F.2d 1279 (8th Cir. 1971); Apex Mining Co. v. Chicago Copper & Chemical Co., 340 F.2d 985, 987 (8th Cir. 1965).
 
 
 61
 The District Court did not make specific findings on the issue of damages, but merely stated that:
 
 
 62
 As a proximate result of the accident, Hysell incurred extremely serious personal injuries, past and future pain and suffering, past and future medical, hospital, nursing and attendant care and expense, and past and future loss of earnings, all in the sum of $1,500,000.00, together with diminution of his services and companionship as a husband. (footnote omitted)
 
 
 63
 We have reviewed the record[9] and are left with the definite impression that the damage award to Richard Hysell may constitute one of the rare situations in which this Court would find excessiveness. See, e.g., Perry v. Bertsch, 441 F.2d 939 (8th Cir. 1971). Although we are presently inclined to the view that the award would be clearly erroneous and plainly unjust, we here hold only that the District Court's conclusory findings must be supported by additional specific subsidiary findings as required by Fed.R.Civ.P. 52(a). In Fuchstadt v. United States, 434 F.2d 367, 370 (2d Cir. 1970), the Second Circuit, discussing the findings a district court sitting without a jury should enter on damages, held:
 
 
 64
 (I)n tort actions for damages the pertinent consideration entering into the award as well as the amount allowed for each item should be stated briefly and clearly "so that the appellate court can properly appraise the elements which entered into the award. * * * Without this information the defendant is unable properly to exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review." Alexander v. Nash-Kelvinator Corp., (261 F.2d 187, 191 (2d Cir. 1958)).
 
 
 65
 See Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065, 1074 (1956); Rapisardi v. United Fruit Co., 441 F.2d 1308, 1312-13 (2d Cir. 1971); Lewis v. Pennington, 400 F.2d 806, 816-18 (6th Cir.), cert. denied, 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444 (1968); Carpenters Local 1273 v. Hill, 398 F.2d 360, 363 (9th Cir. 1968). A remand for such an itemization in compliance with Fed.R.Civ.P. 52(a) is particularly appropriate when the total damage award appears to be overly generous, since the only alternative, an order of remittitur, would require a conclusory determination in the absence of more specific findings of fact. See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2577 (1971).
 
 
 66
 We therefore remand the case to the District Court for further explication and itemization of the award of damages, and anticipate that the award will be reduced to avoid plain injustice to those held liable.V.
 
 Conclusion
 
 67
 In summary, we affirm the findings and conclusions of the District Court that (1) IPS was negligent and that this negligence was a proximate cause of the damages to the Hysells; (2) IPS was not entitled to indemnity or contribution from Jensen Company; (3) IPS was not entitled to indemnity from Simpson; and (4) Sioux City was entitled to indemnity from IPS. We reverse as clearly erroneous, however, the finding that Simpson's negligence was not a proximate cause of the accident, and further hold that IPS is entitled to contribution from Simpson. Moreover, because of our grave concern with the clear excessiveness of the damage award to Richard Hysell, we hold that the District Court's failure to comply with Fed.R.Civ.P. 52(a) in its findings of damages requires that further specific findings be made.
 
 
 68
 The judgment of the District Court is accordingly vacated and the cause remanded with instructions to review the award of damages, make appropriate specific findings, and enter a new judgment not inconsistent with this opinion.
 
 
 
 [1]
 Richard and Barbara Hysell are citizens of the State of Washington; the Iowa Public Service Company is an Iowa corporation with its principal place of business in Iowa; the City of Sioux City is an Iowa municipal corporation; and the amount in controversy exceeds $10,000. See 28 U.S.C. § 1332
 
 
 [2]
 Sioux City does not appeal from the finding of liability
 
 
 [3]
 We therefore need not consider other allegations of IPS negligence: failure to warn of the danger of the transmission lines; failure to have sufficient circuit breakers; failure to insulate; and failure to inspect and insure compliance with the city ordinances
 
 
 [4]
 In American District Telegraph Co. v. Kittleson, 179 F.2d 946, 951-55 (8th Cir. 1950), this Court, applying Iowa law, permitted an action for indemnity to stand against an employer under the Iowa Workmen's Compensation Act even though its basis was primary or "active" negligence rather than secondary or "passive" negligence. The Iowa Supreme Court subsequently rejected this interpretation in Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 324, 144 N.W.2d 303, 309 (1966), holding that the primary-secondary form of indemnity is barred by the common liability rule when one of the tortfeasors is an employer under the Iowa Workmen's Compensation Act. See Mayhew v. Iowa-Illinois Telephone Co., 279 F.Supp. 401, 403, 405 (S.D.Iowa 1967); Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 850-55, 118 N.W.2d 559, 562-65 (1962)
 
 
 [5]
 Code of Iowa § 4.5 (1975) was added by Acts 1971 (64 G.A.) ch. 77, § 3, and the extent to which it altered the general rule of statutory construction in Iowa is unclear. Prior to this addition, the Iowa courts construed Code of Iowa § 4.1 (1975) to provide that the "manifest intent" of the legislature determined whether an amending statute would apply retrospectively. See Flake v. Bennett, 261 Iowa 1005, 1011, 156 N.W.2d 849, 853 (1968); Needham Packing Co. v. Iowa Employment Security Comm'n, 255 Iowa 437, 441, 123 N.W.2d 1, 3 (1963). Iowa statutes were presumed to be retrospective in application not only if such operation was expressly stated but also if it could be necessarily implied. See Flake v. Bennett, supra, 261 Iowa at 1011, 156 N.W.2d at 853; Schultz v. Gosselink, 260 Iowa 115, 117-18, 148 N.W.2d 434, 435-36 (1967). If a statute related to remedy or procedure, however, it would generally be considered to have retroactive application. See Flake v. Bennett, supra, 261 Iowa at 1011, 156 N.W.2d at 853; Schultz v. Gosselink, supra, 260 Iowa at 118, 148 N.W.2d at 436
 The amendment to Section 85.20 of the Iowa Workmen's Compensation Act is clearly not procedural; nor can it be said to be remedial in nature: it does not provide the means "whereby causes of action may be effectuated, wrongs be redressed and relief obtained * * *." Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 561, 149 N.W.2d 789, 792 (1967). See Schultz v. Gosselink, supra, 260 Iowa at 119, 148 N.W.2d at 436. Rather, it is a limitation of the substantive right of action which accrues as a result of damages caused by the tortious conduct of a co-employee.
 
 
 [6]
 Even if the indemnity clause could be read to be inapplicable to a concurrent negligence situation, it is apparent that indemnity would be available to the City because its tortious conduct was "passive" or secondary as compared with the primary or "active" negligence of IPS. See Federated Mutual Implement & Hardware Insurance Co. v. Dunkelberger, 172 N.W.2d 137, 142 (Iowa 1969); Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 322-23, 144 N.W.2d 303, 308 (1966). Cf. Franzen v. Dimock Gould & Co., 251 Iowa 742, 750-51, 101 N.W.2d 4, 10 (1960)
 
 
 [7]
 IPS does not challenge on appeal the propriety of the $200,000 damage award to Barbara Hysell for past and future loss of her husband's services, companionship, and consortium
 
 
 [8]
 The comments of this Court in Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961), although directed to the standard of review of the excessiveness of a jury verdict, are nonetheless applicable in a non-jury context:
 We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.
 See Snodgrass v. Nelson, 503 F.2d 94, 96 (8th Cir. 1974); Zatina v. Greyhound Lines, Inc., 442 F.2d 238, 242-43 (8th Cir. 1971).
 
 
 [9]
 The District Court described the extensive injuries to Richard Hysell in the following terms:
 Both legs were amput(at)ed above the knees and his left arm was amputated above the elbow. He sustained a severe injury to his right side which has weakened the abdominal wall. He has been unable to resume gainful employment since being injured and will in all probability be unable to do so ever again. He is unable to perform most simple domestic tasks unaided, including putting on his leg prostheses. He is able to walk prosthetically over a level, smooth surface at a slow pace and can negotiate steps with the use of a handrail. His left-arm prosthesis functions poorly because of his extensive muscle loss there. He can operate a specially equipped automobile. He requires constant care and attendance, and virtually any movement occasions great physical effort on his part, stressing his heart which has been weakened by rheumatic fever. His right arm functions normally and advanced prosthesis technology may improve his walking and left-arm utilization in the future. The prostheses must be replaced on a regular basis. Hysell was a motion-oriented person prior to his triple amputation and suffers severe frustration from his present condition, including episodes of depression and extreme irritability. His mental state since injury has led him to begin the prescribed use of tranquilizers and to increase his use of alcohol to aid sleep. His incapacitation has severely strained his marital relationship which showed no serious problems prior to the accident. He has incurred a great deal of pain and suffering both physically and psychologically, including phantom (p)ain in the vanished limbs. Hysell's medical expenses at time of trial had reached $40,780.01 and are expected to climb steadily. Further surgery may be required on any or all of his amputations.
 The District Court found that Richard Hysell's remaining life expectancy was 40.34 years.
 The evidence of damages may be summarized as follows:
 Medical expenses to the date of trial were $40,780.01, and attendant care costs to that date were $21,590.00. Dr. William Krigsten testified regarding future medical expenses, assessing the cost of semi-annual medical examinations at $500 per year, or $20,150 over the life expectancy of Hysell. The expense of future medical care and full-time attendants at the Hysell home was said to total $43.18 per day.
 Gene Ziegler, a physiotherapist, testified as to the cost of replacement of prostheses and, utilizing a rate of replacement of every three years plus 10 per cent per year inflation, found this amount to be in excess of $40,000. Ziegler also testified as to the present cost of wheelchairs ($600 for each of two recommended chairs, replaced every four years), alterations of automobiles ($180, replaced every four years), and changes to the family dwelling to accommodate Hysell's impairments (approximately $12,000).
 Professor Charles Linke, an economist at the University of Illinois, calculated that the present value of the estimated $43.18 per day payments for future medical care and attendance at the Hysell home, using a 6 per cent interest rate and assuming a 5.5 per cent growth in wages per year, would be $578,275.00. Lost earnings were assessed on the basis of census data regarding median operative and kindred workers in Iowa, utilizing a 5.25 per cent annual rate of wage growth, in the present values of $16,631.00 for pretrial earnings and $265,111.00 for post-trial earnings. The present value of fringe benefits was determined simply by adding 10 per cent of the present value of lost earnings, or $28,174.20. Non-paid work service to the household was calculated on the basis of a revised university study at a present value of $53,508.00. Thus a total economic loss of $363,424.00 resulted, according to the testimony of Professor Linke. This was, however, a gross earnings total, without subtraction of relevant taxation and social security payments.
 Thus, even taking the Hysells' evidence in its most favorable light, there remains an allowance of approximately $500,000 for subjective damages, presumably pain and suffering and diminution of services and companionship.