**Charles R. HOWARD, Appellant,**

v.

**Katherine GREEN, Appellee.**

**No. 76–1805.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1977.

Decided May 10, 1977.

Rehearing and Rehearing En Banc
Denied June 2, 1977.

**180**

Marshall N. Carlisle, Fayetteville, Ark., on brief for appellant.

Joseph W. Segers, Jr., Fayetteville, Ark., on brief for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Charles Howard appeals from a $4,500.00 judgment rendered in the United States District Court for the Western District of Arkansas in favor of plaintiff Katherine Green on a claim of unjust enrichment. Diversity jurisdiction is established and the applicable substantive law is that of Arkansas. We affirm.

The facts as found by the district court, which are supported by substantial evidence and not clearly erroneous, are relatively simple. In 1973 Katherine Green and her husband Hank Green[1] moved to the Fayetteville, Arkansas, area and began working at the Am-Vets Club. The clubhouse and furnishings therein belonged to the veterans association but were under lease to Howard, who managed the business. Howard was desirous of enlarging the club and improving the physical facilities, but lacked sufficient capital for such a venture. Hank Green had some skill as a carpenter. The two accordingly agreed orally that if Mr. Green made the improvements he would become a partner with Howard in managing the Am-Vets Club.

Mr. and Mrs. Howard and Mr. and Mrs. Green subsequently obtained a $10,000.00 bank loan, all four signing a note in that amount as co-makers. Mrs. Green pledged some personally owned stock as collateral for the loan. Of the $10,000.00, $5,000.00 was delivered by the bank to Howard and used by him for private purposes. The remaining $5,000.00 was delivered to Mrs. Green to be used in financing the planned improvements. It was contemplated that the Howards and the Greens would each repay $5,000.00 of the loan principal.

After making substantial improvements to the Am-Vets Club, Mr. Green began to drink heavily. Friction arose between the parties, amicable relations terminated, and the Greens moved to Tulsa, Oklahoma. The bank notified all parties of default on payment of the note and ultimately sold Mrs. Green's stock for $4,349.27, applying the proceeds on the $10,000.00 note. At various

---

1. Katherine and Hank Green are now divorced.

times Howard paid off the balance of the note.

The district court concluded that Howard had received a net benefit of $4,500.00 due to the improvements made to the club which were financed with Mrs. Green's money and that it would be unjust for Howard to retain such net benefits without compensation to Mrs. Green. It accordingly rendered judgment for her in that amount.

## I.

■ Howard contends, *inter alia,* that the present action is barred under res judicata principles by virtue of a judgment previously rendered in the chancery court of Washington County, Arkansas. Res judicata is of course an affirmative defense, Fed.R. Civ.P. 8(c), and the burden of proof is upon the party asserting it. *Bryson v. Guarantee Reserve Life Ins. Co.,* 520 F.2d 563, 566 (8th Cir. 1975); *May v. Edwards,* 258 Ark. 871, 529 S.W.2d 647, 650 (1975); *Hurst v. Hurst,* 255 Ark. 936, 504 S.W.2d 360, 361 (1974).

■ The record in this case does establish that Hank Green, Katherine's husband, had brought suit in the chancery court contending that Hank Green and Howard had consummated their partnership and praying for a dissolution of the partnership, together with an accounting of partnership moneys. Following trial on the merits that action was curtly dismissed for want of equity. In addition, although there was some confusion about the matter at the oral argument before us, the record establishes that Katherine Green was in substance, although not in form, a party to the chancery court proceedings. See trial transcript at 40 and *Fleming v. Cooper,* 225 Ark. 634, 284 S.W.2d 857, 860–61 (1955). It is also clear that the chancery court action and the instant suit arose out of the same factual circumstances. The record, however, establishes nothing further. In particular, we cannot say that Howard carried his burden of establishing that either the unjust enrichment claim or its factual underpinnings were actually litigated before and determined by the chancery court. While it may be true that the chancery court had before

it some of the evidence pertinent to such claim, including testimony that Katherine Green used her portion of the loan proceeds in making improvements to the club, the record in this case is absolutely barren of any indication that the chancery court made any factfindings, explicit or implicit, with respect to such evidence. Quite to the contrary, every suggestion is to the effect that the chancery court dismissed the prior action for the simple reason that no partnership existed. Such disposition would in no way constitute an adverse determination of any fact essential to the unjust enrichment claim. In short, the record falls far short of establishing that such facts were actually litigated and determined.

On this record, then, we are concerned only with res judicata proper, or claim preclusion, and not with collateral estoppel, or issue preclusion. *See Towle v. Boeing Airplane Co.,* 364 F.2d 590 (8th Cir. 1966). Accordingly, under well-established principles, Howard's defense cannot be sustained unless it is concluded that the claim presented to the chancery court and the claim presented here are the same cause of action. *Bryson v. Guarantee Reserve Life Ins. Co., supra* at 566; 1B J. Moore, Federal Practice ¶ 0.401 (2d ed. 1974); Restatement of Judgments § 48 (1942).

At least two courts, applying the above principles to facts substantially similar to those here, have concluded that separate causes of action were stated and accordingly rejected a res judicata defense. *Casey v. Musgrave,* 72 Nev. 31, 292 P.2d 1066 (1956); *Smith v. Kirkpatrick,* 305 N.Y. 66, 111 N.E.2d 209 (1953). Professor Moore has criticized the results in these cases, expressing the view that they represent too narrow a view of cause of action in jurisdictions with modern joinder procedures. 1B J. Moore, Federal Practice ¶ 0.410[2] at 1180 (2d ed. 1974); *see generally id.* ¶ 0.410[1]; *cf. Hanson v. Hunt Oil Co.,* 505 F.2d 1237 (8th Cir. 1974).

Our task here, however, is not to give our independent view of what modern jurisprudence dictates the proper rule should be. Rather, it is to determine the res judicata

effect which the Arkansas Supreme Court would give to the chancery court proceeding were this ·case before it. *Bryson v. Guarantee Reserve Life Ins. Co., supra* at 566. None of the cases cited by either of the parties convincingly demonstrates that the Arkansas Supreme Court would resolve the dispute one way or the other, and our independent review of the pertinent Arkansas case law has similarly afforded no sure guidance.

The general rule in Arkansas is that in order for the doctrine of res judicata to apply it must appear that the particular matter involved was raised and determined or that it was necessarily within the issue and might have been litigated in the previous action. *May v. Edwards, supra,* 529 S.W.2d at 650; *Timmons v. Brannan,* 225 Ark. 220, 280 S.W.2d 393, 394 (1955); *Pepper v. Bankers Life & Casualty Co.,* 414 F.2d 356, 358 (8th Cir. 1969) (applying Arkansas law). Although the question is admittedly not free from doubt, we are persuaded, at least on this record, that Katherine Green's unfair enrichment claim was not necessarily within the issue presented in the chancery court action and is therefore not barred. As already noted, the chancery court action may well have been dismissed on the simple and plenary ground that no partnership existed. Such disposition would of course have entailed that the Greens were entitled to no accounting of partnership moneys, and there would have been no necessity of considering or deciding whether Howard had been unjustly enriched.

In a diversity case, the interpretation of the district court on a question of state law is entitled to great deference. *Blevins v. Commercial Standard Ins. Cos.,* 544 F.2d 967, 971 (8th Cir. 1976). In the absence of any authority indicating that the Arkansas Supreme Court would extend the res judicata defense to situations such as

that presented here, we affirm the conclusion of the district court that this action is not barred.

## II.

Other issues raised by Howard cause us less difficulty. It is argued that the partnership agreement between Howard and Hank Green, which never resulted in the contemplated creation of a partnership, did not require reimbursement to the Greens for improvements made to the club short of those necessary to create the partnership under the agreement, and that unjust enrichment cannot provide by implication what the agreement omitted. We may assume that such would be correct if, as Howard further contends, the Greens had repudiated or breached the partnership agreement. *But cf.* Restatement of Contracts § 357 (1932). The record, however, establishes no such repudiation or breach.[2] Rather, the testimony of both parties quite clearly reflects, as found by the district court, that friction arose between the parties, amicable relations terminated, and the Greens moved to Tulsa. The only conclusion which can be drawn is that the parties, unable to resolve their differences, either rescinded or abandoned their agreement. And, when termination of a contract is not a breach of duty, a right to compensation for work already done exists. 5 A. Corbin on Contracts § 1106 (1964); *see* 66 Am. Jur.2d *Restitution and Implied Contracts* §§ 6, 7 & 12 (1973).

The district court ultimately determined that Howard had received a net benefit of $4,500.00 due to improvements to the club which were financed with Mrs. Green's money. Howard contests this finding. The amount of damages entered as the judgment in a non-jury case is within the ambit of the discretionary powers of the district court, although the standard of review is ultimately that of the "clearly erro-

---

**2.** Howard's testimony is replete with instances of the poor quality work sometimes done by Mr. Green, and reference is similarly made to Mr. Green's failure to enlarge the building as originally agreed. But we are given virtually

no evidence as to the precise terms of agreement, such as exactly what was supposed to be done by when, and we are told of nothing which could be construed as a repudiation.

neous" concept of Fed.R.Civ.P. 52(a). *Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 786 (8th Cir. 1976). We are not persuaded that the damage award here constitutes one of the rare situations in which this court would find excessiveness. *Cf. id.* at 787. There is competent testimony that the Greens made substantial improvements to the club's parking lot, driveway and sidewalks, as well as the bathrooms, and that they furnished the club with bar equipment and some sinks. Katherine Green testified she spent $5,000.00 on such improvements, and Howard himself admitted "I would say they would have put in $5,000.00."[3] In addition, the Greens performed considerable labor in making the improvements. While it is clear that not all of the work done by the Greens was quality work, the district court expressly took that factor into account, and we as an appellate court cannot say that the evidence is so lacking as to warrant our disturbing the ultimate finding below.

The remaining contentions raised by Howard are without merit. It is argued that Howard was not unjustly enriched by the sale by the bank of Katherine Green's stock, since all four co-makers were equally in default of payment and since Howard paid more than his share of the note. The district court did not find or rule to the contrary.

[11] It is argued that unjust enrichment is inapplicable to agreements entered into by the parties concerning the same subject matter as that in dispute and that the bank note governed the rights and obligations between the parties and the bank. The judgment below rests not on who was obligated to pay the bank or whether the bank could sell the stock, matters which were governed by the note, but rather on the fact that Howard received the benefits of moneys rightfully belonging to Katherine Green, a matter clearly not governed by the note.

Finally, it is argued that unjust enrichment was not raised in the pleadings and that Howard was unfairly surprised when the matter was presented at trial. Despite Howard's assertion to the contrary, it is clear that the claim was tried with the implied consent of the parties. Fed.R. Civ.P. 15(b). If Howard was of the opinion that he could not fairly meet the evidence, he should have sought a continuance. *Id.* Having failed to do so, he cannot successfully complain on appeal that the pleadings and the proof varied.

No error having been shown, the judgment appealed from is affirmed.

Affirmed.

---

**3.** Howard is correct in maintaining that the proper measure of damages is the value of the net benefit conferred upon him and not the amount of Katherine Green's expenditures. Evidence pertaining to the latter, however, can doubtless be considered by the trial court as circumstantial evidence tending to substantiate the former. The district court applied the correct test.