118 N.W.2d 559 (1962)
Robert F. BLACKFORD, Plaintiff,
v.
SIOUX CITY DRESSED PORK, INC., a Corporation, Defendant.
SIOUX CITY DRESSED PORK, INC., a Corporation, Cross-Petitioner-Appellant,
v.
R. E. LANGLEY, Defendant to Cross-Petitioner-Appellee.
No. 50810.
Supreme Court of Iowa.
December 11, 1962.
Rehearing Denied February 12, 1963.
*560 Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for cross-petitioner-appellant.
Sifford & Wadden, Sioux City, Corbett & Corbett of Sioux City, for defendant to cross-petitioner-appellee.
William A. Shuminsky, Sioux City, for plaintiff.
THOMPSON, Justice.
The case before us arises through an appeal from a ruling and judgment of the trial court which sustained a motion to dismiss the cross-petition of Sioux City Dressed Pork, Inc., against the third party defendant, R. E. Langley. The case is before us only upon the pleadings and the motions and rulings thereon.
The plaintiff is not involved in the issues to be determined here. His petition alleges that at all times material he was an employee of R. E. Langley, now the cross-petition defendant. Other allegations are: that about December 1, 1958, Langley entered into a contract with the defendant and cross-petitioner, Sioux City Dressed Pork, Inc., under the terms of which Langley agreed to furnish labor to wash the walls, equipment and floors of the cross-petitioner's plant in Sioux City at the end of each day's operations. A copy of the contract is attached to the petition, and a copy of the same contract is attached to the cross-petition. By its terms Langley agreed to furnish all necessary labor to wash the walls, equipment and floors in the plant in the area where the slaughtering and refrigerating were carried on. This was to be done pursuant to sanitary requirements. Langley agreed to furnish and pay for supervision and control of the labor necessary to perform the job and to maintain his own payroll accounts.
The contract also contained this provision: "5. Langley shall perform the work as he deems fit, the only requirements being that any specifications for cleanliness by the Federal Inspectors must be met * * *". Paragraph 7 provided in part: "* * * Langley shall have responsibility for personnel employed by him, while in the plant or elsewhere."
The plaintiff's petition further alleged that on December 3, 1960, he was severely *561 injured when his hand was caught in a pork casing cleaning machine which he was attempting to clean while it was in motion, and his injuries were caused by the negligence of the defendant in failing to have a proper guard or other safety appliance on said machine, in permitting plaintiff to operate it without such guard and without proper instructions or warning as to the danger involved; and in ordering the plaintiff to complete the work of cleaning the machine at a speed which increased the danger of an accident. Other negligences closely related to those stated were pleaded.
The defendant filed its answer denying liability and pleading other defenses and at the same time filed its cross-petition against Langley in which it pleaded the suit brought against it by the plaintiff; the contract between itself and Langley; its denial of any liability to the plaintiff; and that if it should be held liable to the plaintiff it would be entitled to indemnity or contribution from the cross-petition defendant, Langley. It then pleaded that Langley was negligent in certain specified particulars and that said negligence proximately caused the plaintiff's injuries. These specifications, summarized, were: failure to instruct plaintiff as to the proper method of washing the machine and the proper method of turning on and off the various machines and the proper care to be observed in performing the services for which Langley had employed plaintiff; in allowing the plaintiff to wash the machine while it was in motion; and in failing to warn plaintiff of the hazards involved in working about moving machinery. The prayer of the cross-petition was for indemnity against Langley for any judgment recovered by plaintiff against the cross-petitioner; or in the alternative for contribution from Langley.
To this cross-petition Langley filed his motion to dismiss, which we set out in full: "1. As appears in the allegations of Paragraph III (including paragraph 4 of Exhibit A) and Paragraph IV of said Cross-Petition, plaintiff was an employee of defendant to cross-petition and by the provisions of Chapter 85 of the 1958 Code of Iowa, I.C.A. the sole and exclusive liability of defendant to cross-petition is to provide compensation as provided by said Chapter. 2. Cross-Petitioner alleges it is not liable to plaintiff Blackford, and therefore said cross-petition fails to state a cause of action against defendant to cross-petition, since cross-petitioner fails to plead cross-petitioner's liability to plaintiff." The trial court entered its ruling sustaining the motion to dismiss as to Par. 2, and stating: "The Motion having been so sustained, no ruling is made by the Court as to Par. 1 thereof as it is for the purpose of this Motion and Ruling now moot." From this ruling of the court we have the present appeal.
I. The ruling of the trial court cannot be sustained upon the ground on which it was placed. At the time the ruling was made, we had not decided Fane v. Hootman, Iowa, 117 N.W.2d 435. The trial court in all probability relied upon our pronouncement in Allied Mutual Casualty Company v. Long, 252 Iowa 829, 107 N.W.2d 682. But we distinguished this case in the Fane case, and pointed out that Rule 33(b), R.C. P., 58 I.C.A. clearly provides for bringing in a third party: "When a defendant to a petition * * * will, if held liable thereon, thereby be entitled to a right of action against one not already a party, he may move to have such party brought in * *". In the Allied Mutual case there was no action pending; in the Fane case there was.
The instant case is parallel to the Fane case. The cross-petition meets the tests of that case and of Rule 33(b), supra. If the defendant is held liable to the plaintiff, he alleges the cross-petition defendant will thereby be liable to him.
II. However, the cross-petition plaintiff now concedes that it will have no right to contribution in any event; probably because there can be no joint liability of Langley and itself to the plaintiff, because Langley's liability is different, being measured by the Iowa Workmen's Compensation laws. It does, however, insist that it has pleaded a *562 cause of action for indemnity if it is held liable to the plaintiff. Since this issue will arise upon further proceedings in the case, we think it should be determined. Of course in this opinion we are speaking solely of the case as made by the pleadings; what the proofs may be we have no way of knowing and no occasion to decide.
The right of indemnity has often been recognized in Iowa. In Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506, we noted several situations under which indemnity may be recovered, including this: "It is broadly stated that `where one is compelled to pay money which in justice another ought to pay * * * the former may recover from the latter the sums so paid * * *.'" The case of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, is closely in point on this and other questions which will be discussed later. In that case, the steamship company had an informal contract with the stevedoring company to load and unload its ships. The cargo was improperly stored, resulting in an injury to one of the employees of the stevedoring company. He brought action against the steamship company, which was held liable because of failure to inspect. It was held entitled to indemnity, the United States Supreme Court saying: "The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of storage are inescapable elements of the service undertaken." Loc.Cit. 350 U.S. 134, 76 S.Ct. 237, 100 L.Ed. 133.
In considering the same case, the U.S. Circuit Court of Appeals, Second Circuit, said: "Nor does the absence of a formal contract bar indemnity. * * * Ryan was obligated by implied contract to perform the work in a reasonably safe manner." Palazzolo v. Pan-Atlantic Steamship Corporation, 211 F.2d 277, 279. The application of these principles to the case at bar is evident. The contract between the cross-petition plaintiff and Langley gave Langley entire supervision over the work "as he deems fit". He employed and directed all labor, and it was his duty to see that the work was performed safely and so that no one was injured. Assuming, but not deciding, that the original defendant may have been negligent in failing to guard the machine properly, or in other ways specified, yet the primary duty to see that the work was done safely was upon Langley under his contract which impliedly required that care.
III. We come next to the important and troublesome question in the case. Langley, the cross-petition defendant, correctly says that even though the ground upon which the court granted the motion to dismiss cannot be upheld, if any ground of the motion was good and should have been sustained, it is our duty to affirm. Hot Spot Detector v. Rolfes Electric Corporation, 251 Iowa 647, 653, 102 N.W.2d 354, 360, and citations; Culbertson v. Anderson, 251 Iowa 265, 273, 274, 100 N.W.2d 633, 637, 638; State v. Eichler, 248 Iowa 1267, 1274, 1275, 83 N.W.2d 576, 580.
We are therefore faced with the difficult question whether an action for indemnity will lie in an otherwise proper case by a third party who has been compelled to respond in damages for negligence, against the employer of the injured party who has compensated such employee under the Workmen's Compensation Act,
The Iowa Workmen's Compensation Act, insofar as it is material here, is found in Sections 85.3, 85.20 and 85.22. The material part of Section 85.3 is this: "and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury."
Section 85.20 says: "Rights of employee exclusive. The rights and remedies provided in this chapter for an employee on account *563 of injury shall be exclusive of all other rights and remedies of such employee, his personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury; * * *".
Section 85.22 contains the provisions permitting the employee to bring action for damages against a third party who may be liable for causing his injury, and subrogating the employer to the rights of the employee and authorizing him to bring the action if the employee does not do so.
The point has been before courts in several other jurisdictions, with opposing results. For the contention that such an action will not lie, that the liability of the employer is exclusively under the compensation acts, it is urged that if the employer can be held liable to indemnify a third party who has been found negligent so as to give the employee a cause of action against such third party, the result will be to compel the employer to do indirectly what he is exempt from doing directly. This is at first glance a persuasive argument; but we think a careful analysis will not support such a conclusion.
Among the authorities which uphold the view that there is no liability over against an employer are Kittleson v. American District Telegraph Company, U.S.D.C., N.D. Dist. of Iowa, 81 F.Supp. 25; Maio v. Fahs, 339 Pa. 180, 14 A.2d 105; Hunsucker v. High Point Bending & Chair Company, 237 N.C. 559, 75 S.E.2d 768; Rawlinson v. Koninklyke Nederlandsche Stoomboot Company, U.S.D.C., S.D. of Texas, 197 F.Supp. 201; West Texas Utilities Company v. Renner, Tex.Civ.App., 32 S.W.2d 264; Westfall v. Lorenzo Gin Company, Tex.Civ.App., 287 S.W.2d 551; Royal Indemnity Company v. Southern California Petroleum Company, 67 N.M. 137, 353 P.2d 358. It might be possible to distinguish some of these because they concern contribution rather than indemnity, or because of differences in the wording of the Workmen's Compensation statutes in the several states; but for the purposes of this discussion at least it may be conceded that they are opposed to the view we take of the legal situation. We content ourselves by saying that we do not find them as persuasive or as sound as those cases which have held that liability of the employer may be found in a proper case for indemnity.
IV. An authority directly in point on its facts and law is Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation, supra. It was there held that the action over against the employer by the third party held negligent to the employee, was not based upon the employer's negligence, but on its breach of a duty owed by the employer to the third party arising out of the contract between them. Although the contract was informal and did not in terms require the employer to do the work of handling the third party's cargo safely, the United States Supreme Court held there was an implied agreement to so do the work which had been breached. This resulted in a liability through negligence of the third-party to the employer's employee; but the action by the third party against the employer was not for negligence, but for a breach of the implied agreement to safely perform. Perhaps it is more accurate to say the action was for negligence arising out of breach of contract. Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946, from which we quoted with approval in Kunzman v. Cherokee Silo Company, Iowa, 114 N.W.2d 534, 537. So in the case at bar, while the employee pleads negligence of the Dressed Pork Company in failing to guard the machine properly, it is nowhere asserted that the company required the machine to be cleaned while in operation. It is also shown that the employee was permitted, or required, to wear gloves while cleaning, and this resulted in a glove being caught in the machine, drawing the employee's hand into the rollers and causing the injury. The method of cleaning was under the contract entirely under the control of Langley, and the primary responsibility *564 was his. His implied agreement was to do the work safely.
The Ryan case has been followed in the United States Supreme Court by Waterman Steamship Corporation v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, where the same holding was made. Another case which we deem well considered on the point in question is Westchester Lighting Company v. Westchester County Small Estates Corporation, 278 N.Y. 175, 15 N.E.2d 567, 568, 569; where it was said: "Plaintiff does not sue for damages `on account of' Haviland's death. Plaintiff asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the defendant.
"* * * It may be admitted that if the defendant is held to answer to the plaintiff in this action the result (as the Chief Judge says) is that an employer is made liable indirectly in an amount which could not be recovered directly. This consequence, we think, does not decide the issue against the plaintiff. Recovery over against the employer in an unusual case like this need not be rested upon any theory of subrogation. An independent duty or obligation owed by the employer to the third party is a sufficient basis for the action." It is to be noted that the New York statute was considerably stronger than the Iowa Workmen's Compensation Law in its language making the employer's liability exclusive. It made the liability exclusive to the injured employee, his personal representatives, parents, dependents or next of kin, "or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death". The Iowa statutes do not contain, particularly, the quoted language or anything substantially like it. Yet the New York court of last resort held there might be a recovery over against the employer.
The same conclusion was reached in Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 365, 43 A.L.R.2d 865, where the Minnesota Supreme Court said: "The Workmen's Compensation Act gave to both the employee and the employer some benefits which they did not have under the common law. In return therefore they surrendered some of the advantages which they had under the common law. [Citing authority]. That is not true of a third party standing in the position of Mrs. Bierman. She gained nothing by the Workmen's Compensation Act and, consequently, should not be deprived of a right which she would have under the common law." The Minnesota court also refused to distinguish their Act from the Iowa law because the Minnesota Act contained the words "or any other person" not found in the Iowa statute. Loc. cit. 241 Minn. 349, 63 N.W.2d 363, 364. See also Baugh v. Rogers, 24 Cal.2d 200, 148 P.2d 633, 641, 642, 152 A.L.R. 1043.
We turn then to an interesting situation which arises because of two different interpretations of the Iowa statute on the point in question, found in Kittleson v. American District Telegraph Company, supra. The United States District Court for the Northern District of Iowa, which first heard the case, construed the Iowa Workmen's Compensation Act as making the employer's liability solely to compensation of injured employee under the terms of the act, not only as against the employee but all the world. On appeal, this holding was reversed by the Circuit Court of Appeals, 8th Cir., 179 F.2d 946, 953. The appellate court there said: "By section 85.3 every employer subject to the Act is required to `pay compensation * * * for any and all personal injuries sustained by an employee arising out of and in the course of the employment, and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury.' The language quoted imposes upon the employer liability to the extent provided by the Act to an employee injured in the course of his employment, and relieves the employer from further liability to his employee. To say that this language relieves an employer from *565 liability to a third party, to one not in his employ, for the employer's act of negligence damaging such third party is to read into the Act something that plainly is not there."
Each party to this appeal relies upon one of the versions of the Kittleson case; Langley, that of the trial court, the cross-petitioner that of the Circuit Court of Appeals. In response to the argument that the trial court's holding was reversed and is no longer authoritative law, Langley urges that both courts were merely construing the Iowa law; that the final construction of Iowa common and statutory law is for this court; and we should adopt the reasoning we consider the sounder. While the federal courts and the law school reviews have in recent years much curtailed our prerogative of having the last word as to interpretations of Iowa law, there is still probably an area in which we are entitled to decide what it is. Accordingly we agree with Langley that we are not bound by the Circuit Court decision in the Kittleson case. But having conceded this much, we are next compelled to say that we think that decision sound and in line with the better reasoning on the proper construction of our Workmen's Compensation Statute. The cross-petition is not based on a claim of negligence of the employer which injured the employee, but upon a breach of an implied contract to do the work safely. Nor do we see any language in the statute which compels a holding that it was intended in any way to limit or take away the rights of third parties. As the Minnesota court said, the third party has gained nothing by the statute, and should not be deprived of a right otherwise held at common law. An intention of the legislature, in enacting a statute for the regulation of rights between the employer and employee, to destroy the rights of third parties should at the very least be clearly expressed. There is no such expression here.
The defendant to cross-petition, Langley, cites and relies upon Fidelity and Casualty Company v. Cedar Valley Electric Company, 187 Iowa 1014, 174 N.W. 709. This case was distinguished by the Circuit Court of Appeals in the Kittleson case, loc. cit. 179 F.2d 955. The employer there was bringing his action as a subrogee to the rights of the employee, and as though the employee or his personal representative had brought it. So any negligence of the employer contributing to the injuries would be immaterial, granted that there was shown some negligence of the third party which was a proximate cause of such injuries. The employer stands in the shoes of the injured employee for the purposes of such an action, and brings it, in part at least, for the employee's benefit.
The ruling and judgment of the trial court is reversed and the cause remanded for further proceedings.
Reversed and remanded.
All Justices concur.