Leonard STEINMETZ and Adah Stein-
metz and Winnebago Industries,
Inc., Appellees,

v.

The BRADBURY CO., INC., Appellant.

No. 79–1381.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1979.

Decided March 14, 1980.

Greg Knoploh, Fort Dodge, Iowa (argued) and David A. Opheim, Fort Dodge, Iowa, on brief, for appellant.

Edward J. Gallagher, Jr., Gallagher, Martin, Keith & Langlas, Waterloo, Iowa (argued), Edward J. Gallagher, III, Waterloo, Iowa, and Mark B. Anderson, Anderson, Story & Anderson, Cresco, Iowa, on brief, for appellee Steinmetz.

Larry Cohrt, Waterloo, Iowa, argued, for appellee Winnebago; Swisher & Cohrt, Waterloo, Iowa, on brief.

Before BRIGHT and McMILLIAN, Circuit Judges, and HUNTER,* District Judge.

McMILLIAN, Circuit Judge.

Appellant The Bradbury Co., Inc. appeals from a district court[1] judgment awarding appellees Leonard and Adah Steinmetz damages and dismissing appellant's crossclaim against appellee Winnebago Industries, Inc. (hereinafter Winnebago) for indemnity. Leonard Steinmetz injured his hands while working at a machine built by appellant and, together with his wife Adah, brought a products liability claim in federal court under diversity jurisdiction. Appellant brought a crossclaim against Winnebago, the owner of the machine and employer of Leonard Steinmetz at the time of the injury. The Steinmetz claim was tried before a jury, which returned a verdict awarding Leonard Steinmetz $150,000 for his injuries and Adah Steinmetz $35,000 for loss of consortium. The district court denied appellant's motion for a new trial, dismissed its indemnity crossclaim against Winnebago and entered judgment accordingly. We affirm.

Leonard Steinmetz was injured while working at a machine known as a rigidizer, which appellant designed, built and installed for Winnebago. Appellant does not dispute that the jury could find that the machine was unreasonably dangerous because of its design and because of an absence of written operating instructions or appropriate notices such as decals on the machine to warn of operating hazards. In this appeal the more limited argument is made, that misuse or alteration of the machine, not its dangerous design, caused appellant's injury and that the trial court erred in refusing to instruct the jury on the issues of misuse or alteration. In order to evaluate this claim, we briefly review evidence, largely undis-

---

* The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

puted, concerning the machine and the injury to Steinmetz.

The rigidizer housed five-inch diameter metal rollers mounted next to one another so that power applied to turn the rollers would pull sheets of metal through the machine at about sixty feet per minute and flatten the metal. Sheet metal was fed into the machine through a slot in the front of the housing. Operation of the rigidizer required some cleaning and adjustment of the rollers, and the top of the housing could be removed in order to expose the rollers to view as required for such maintenance. (This "top plate" may have been removed permanently by Winnebago employees.) Because the drive mechanism could not be detached from the rollers in normal use of the ridigizer, the rollers could be turned only by applying power controlled at a panel on the side of the machine's housing. An operator could inspect the full circumference of the rollers only by applying the drive mechanism; appellant claims that the operator was expected during maintenance to use the power to "jog" the rollers around little by little, stopping repeatedly for inspection or adjustment.

The injury to Steinmetz occurred after he noticed imperfections in the metal coming out of the machine. While attempting to adjust the rollers, he turned on the drive mechanism and left it on as he moved to the front to perform maintenance. His hands were caught between the rollers and were crushed. The injuries were painful, required repeated surgical operations and resulted in a fifty percent disability to both hands.

There is no dispute that, at the time of the ridigizer's installation, appellant foresaw the danger that an operator's hand would be caught in the rollers during maintenance. "Bradbury . . . explained the operation, maintenance and safety procedures to be used . . . [and] showed [Winnebago's] foremen where the operators' hands should not be placed . . . [and] specifically stated that when performing maintenance duties, hands should not be placed on the moving rollers." Brief of Appellant at 14.

Because it was foreseeable that an operator would be injured under the circumstances in which Steinmetz actually was injured, these circumstances do not support a claim of misuse or alteration of product. It is not disputed that the product could have been found unreasonably dangerous. Nevertheless, misuse or alteration of the product by someone other than appellant would insulate appellant from liability, if it were shown that the misuse or alteration, not the design or construction of the product, caused the plaintiff's injury. See generally 1 R. Hursh & H. Bailey, American Law of Product Liability 2nd, §§ 4.16, 4.17 & 4.40 (1974). Because appellant could foresee the likelihood of unreasonable dangers resulting from the misuse or alteration of the machine, however, appellant cannot escape liability because of the misuse or alteration. See Porter v. United States Steel & Wire Co., 436 F.Supp. 1376, 1381–82 (N.D.Iowa 1977); Aller v. Rogers Manufacturing Co., 268 N.W.2d 830, 837–38 (Iowa 1978). At the time of installation, appellant recognized the danger that due to the rigidizer's design an operator during maintenance might place his or her hands improperly and suffer injury as Steinmetz did. Appellant now points to a number of ways the injury might have been avoided by safer operation, but that does not alter the fact that the danger of injury such as that suffered by Steinmetz was in fact foreseen.

Appellant also challenges the verdicts awarded by the jury as excessive. We disagree. There was testimony that Leonard Steinmetz lost earning potential with a value of over $90,000 because of the injury, that he suffered considerable pain and suffering and that he was permanently disabled fifty percent in the use of both of his hands. Therefore, the jury's award of $150,000 damages to him was not "monstrous" or "shocking" or a plain injustice. See Taken Alive v. Litzau, 551 F.2d 196 (8th Cir. 1977); Solomon Dehydrating Co. v. Guyton, 294 F.2d 439 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192

(1961). Although Adah Steinmetz prayed relief of only $21,000, the prayer does not limit her recovery. Fed.R.Civ.P. 54(c).[2] "[T]his is a matter of procedure, governed entirely by F.R. 54(c), as many cases have held. . . . [W]here the defendant appears and the parties are at issue, the final judgment shall grant the relief to which the prevailing party is entitled, regardless of the relief demanded." *Troutman v. Modlin*, 353 F.2d 382, 385 (8th Cir. 1965), *citing Riggs, Ferris & Greer v. Lillibridge*, 316 F.2d 60, 62 (2nd Cir. 1963) (other citations omitted). In light of the painful injury and permanent disability to Leonard Steinmetz, the jury's verdict in her favor is supported by evidence and cannot be deemed shocking or a plain injustice. Although the question of variance between the prayer and the award is governed by federal law, we note also that as to the amount of the damages it is not clear that $35,000 is a greater sum than could be allowed under Iowa law. *See Olson v. Drahos*, 229 N.W.2d 741 (Iowa 1975).

█ Finally, appellant challenges the district court's dismissal of its crossclaim for indemnity from Winnebago, Steinmetz's employer. Because Winnebago has satisfied its obligation to Steinmetz under the Iowa workers' compensation law, Iowa Code § 85, Iowa law bars any other liability claim against Winnebago predicated upon Winnebago's negligence toward Steinmetz. *Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 782 (8th Cir. 1976); *Iowa Power & Light Co. v. Abild Construction Co.*, 259 Iowa 314, 144 N.W.2d 303 (1966). However, where an employer has an independent contractual agreement, whether express or implied, to indemnify a third party, a settlement under the workers' compensation law does not bar an indemnity claim. *Hysell v. Iowa Public Service Co., supra*, 534 F.2d at

784–85; *Blackford v. Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 118 N.W.2d 559 (1963).

█ Appellant argues that an implied duty of Winnebago to indemnify appellant arose under the contractual agreement for sale and installation of the rigidizing machine. As discussed above, during the installation process appellant's representatives instructed Winnebago's management on safe operation of the machine. Appellant contends that Winnebago had an implied contractual duty to pass these instructions on to its employees operating the rigidizer, and that breach of this duty created an obligation to indemnify appellant for resultant losses.[3] In essence, appellant argues that an industrial enterprise such as Winnebago which buys this kind of potentially dangerous machinery for use in the productive process has not only a contractual obligation to pay the price of the machinery, but also an implied contractual obligation to undertake certain safety precautions suggested by the seller.

This theory is somewhat novel. The basic obligation of buyers under sales contracts is the obligation to pay the price, Iowa Code § 554.2301 (UCC § 2–301), and we are not aware of any cases under Iowa law (or in other jurisdictions) finding any implied duty of a buyer except where necessary to effectuate payment of the contemplated price. *See generally* 3 A. Corbin, Contracts § 568 (1963); R. Nordstrom, Handbook on the Law of Sales 336–72 (1970). *Cf. Fairfield Engineering Co. v. Winger Construction Co.*, 309 F.Supp. 64 (S.D.Iowa 1969) (no such duty of employer using scaffolding in construction work toward provider of scaffolding). Nevertheless, under the Uniform Commercial Code, Iowa Code § 554, there are two sources of implied contractual duty

---

2. "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Fed.R.Civ.P. 54(c).

3. Our conclusion that Winnebago owed appellant no independent contractual duty to pass on

the oral instructions makes it unnecessary to reach the question whether an obligation to indemnify would result from a breach of the kind of duty claimed by appellant. *Cf. Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280 (Iowa 1979) (consequential damages for breach of sales contract). Winnebago also argues that it gave adequate instructions to Steinmetz.

which by their terms would apply to buyers as well as sellers or parties to other types of contracts.[4]

One source of implied duties is the obligation of all parties to all commercial transactions to deal in good faith. Iowa Code § 554.1203 (UCC § 1–203). In general, good faith means no more than honesty in fact in the transaction. Iowa Code § 554.1201(19) (UCC § 1–201(19)); *Nora Springs Cooperative Co. v. Brandau*, 247 N.W.2d 744 (Iowa 1976). Appellant does not claim that Winnebago has failed to meet this standard. However, in sales transactions in the case of a "merchant," good faith means additionally adherence to reasonable commercial standards in the transaction. Iowa Code § 554.-2103 (UCC § 2–103). A merchant includes "a person who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . . ." Iowa Code § 554.2104(1) (UCC § 2–104(1)). Although Winnebago might fit within the literal meaning of these words, it is doubtful that under Iowa law Winnebago would be a merchant in regard to its purchase of the rigidizer. The Iowa Supreme Court has suggested that it is expertise in buying and selling the goods, rather than special knowledge about the goods themselves, that is determinative. *See Sand Seed Service, Inc. v. Poeckes*, 249 N.W.2d 663 (Iowa 1977). "The . . . description having to do with occupation, knowledge and skill includes electricians, plumbers, carpenters, boat builders, and the like." J. White & R. Sommers, Uniform Commercial Code 289 (1972).

■ Even if Iowa law does define Winnebago as a "merchant" in machinery, the district court was justified in concluding that Winnebago had breached no duty toward appellant. The district court found that appellant had, for example, supplied no written operating instructions and placed no warning decals on the rigidizer, despite the foreseeability of the danger that resulted in the injury to Steinmetz. This failure undermines appellant's assertion that Winnebago's failure to pass on instructions was commercially unreasonable.

A second source of implied contractual terms under Iowa law are those supplied by "course of dealing" or "usage of trade." Iowa Code §§ 554.1205, 2314(3) (UCC §§ 1–205, 2–314(3)). Appellant does not draw attention to any general usage of trade or any sequence of dealings between the parties. *See generally* 1 A. Squillante & J. Fonseca, Williston on Sales §§ 3–7 (4th ed. 1973); *cf. Hendrick Savings Bank v. Myers*, 229 N.W.2d 252 (Iowa 1975) (emphasizing successive transactions as the basis of a course of dealing). Nevertheless the code by its terms seems to leave open the possibility that a course of dealing could arise out of the circumstances of a single transaction, as course of dealing is defined as "a sequence of previous conduct between the parties . . . which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Iowa Code § 554.1205(1) (UCC § 1–205(1) and *See* Comment 2 to § 1–205).

■ Assuming the Iowa courts would recognize a course of dealing arising from the circumstances of a single transaction, however, appellant still has not established any implied duty on this basis. Appellant asserts that Winnebago's management had a general policy of passing on to its employees oral operating instructions for machinery, and that appellant may have expected this practice to be followed in this case. But appellant's failure to provide written instructions or place safety warnings on the machine would equally be a part of this course of dealing. The circumstances as a whole therefore would not support the finding of an implied duty owed by Winnebago to appellant.

For the reasons stated above, the judgment is affirmed.

---

4. This transaction involved a commercial sale of machinery and therefore was covered by the Uniform Commercial Code. *See Bonebrake v. Cox*, 499 F.2d 951, 957–60 (8th Cir. 1974).