Gerald C. THEUS and Poulet d'Or, Plaintiffs,

v.

PIONEER HI–BRED INTERNATIONAL, INC., and Pioneer Overseas Corporation, Defendants.

Civ. No. 89–0716–B.

United States District Court, S.D. Iowa, C.D.

June 11, 1990.

Wendy L. Carlson, Whitfield, Musgrave & Eddy, Des Moines, Iowa, for plaintiffs.

John A. Templer, Jr., West Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION

VIETOR, Chief Judge.

Defendants move to dismiss counts I, III, V, and VI of plaintiffs' complaint. Plaintiffs resist, and oral arguments were heard.

Plaintiff Gerald Theus, who is black, is a Michigan citizen who currently resides in Abidjan, Ivory Coast. He is the president and sole stockholder of plaintiff Poulet d'Or, an Ivory Coast corporation. Defendants Pioneer Hi–Bred International, Inc. (Pioneer) and Pioneer Overseas Corporation (POC) are Iowa corporations with their principle places of business in Des Moines, Iowa.

Plaintiffs allege in their complaint that they entered into an agreement with defendants for the production and distribution of seed corn in the Ivory Coast. Between 1985 and 1989, plaintiffs tested a variety of hybrid seeds for suitability in the Ivory Coast. After successfully testing a particular hybrid, plaintiffs arranged to supply a large order of seed to the Ivorian government. Plaintiffs allege that, on account of Theus's race, POC interfered with the prospective contract between plaintiffs and the Ivory Coast ("Government contract"), and that POC's discriminatory conduct caused the execution of a different contract (Ministry Agreement). The Ministry Agreement required Poulet d'Or to waive its exclusive right to sell, substituted POC as the seller of seed, and imposed allegedly unjust contractual terms. The decision to discriminate was made in the United States.

Plaintiffs allege that defendants violated 42 U.S.C. § 1981 (Count I). Jurisdiction is based on 28 U.S.C. § 1331. Plaintiffs also raise state law claims, including breach of contract (Count II), breach of duty of good faith and fair dealing under the Uniform Commercial Code (UCC) (Count III), intentional interference with contractual relations (Count IV), intentional interference with prospective business advantages (Count V), and duress (Count VI). Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and pendent jurisdiction. The parties agree that Iowa law governs the state law claims.

Pursuant to Fed.R.Civ.P. 12(b)(1), defendants move to dismiss Count I of plaintiffs' complaint. Defendants contend that § 1981 does not provide a cause of action to Theus because the alleged discrimination took place outside the territorial United States. Because plaintiffs allege subject matter jurisdiction under 28 U.S.C. § 1331, and not 28 U.S.C. § 1343, the 12(b)(1) motion will be treated as a 12(b)(6) motion. *Compare Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (§ 1331 jurisdiction not defeated by failure to state claim upon which relief can be granted) *with City of Kenosha v. Bruno,* 412 U.S. 507, 513–14, 93 S.Ct. 2222, 2226–27, 37 L.Ed.2d 109 (1973) (§ 1343 jurisdiction defeated by failure to state claim upon which relief can be granted) (overruled on other grounds by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Plaintiffs contend that Count I does not implicate extraterritorial application of § 1981 because the decision to discriminate was made in the United States. A *decision* to discriminate, however, does not create a claim under the civil rights acts—there must be an *act. Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980). The act must be related to the underlying claim. *Lopez v. Pan Am World Services, Inc.,* 813 F.2d 1118, 1119–20 (11th Cir.1987) (ADEA does not apply extraterritorially even though discriminatory conduct in the United States); *Pfeiffer v. William Wrigley Jr. Co.,* 755 F.2d 554, 559 (7th Cir.1985) (same, discrimination occurs at "work station"); *Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949)

(overtime pay law does not apply extraterritorially even though employment contract signed in the United States). *See also Sutain v. Shapiro and Lieberman,* 678 F.2d 115 (9th Cir.1982) (venue for § 1981 where "substantial part of acts * * * occurred"); *Jimenez v. Pierce,* 315 F.Supp. 365, 367 (S.D.N.Y.1970) (venue for § 1981 claim "in doubt" where discriminatory regulation promulgated in district, but effects elsewhere).

Plaintiffs' § 1981 claim revolves around two contracts: the Government contract, which defendants allegedly prevented; and the Ministry Agreement, which resulted from defendants' conduct. Both contracts were in the Ivory Coast, and therefore, extraterritorial. The Government contract would have been an agreement between the Ivorian government, an Ivorian corporation, and a resident of the Ivory Coast. The contract would have been negotiated, signed, and performed in the Ivory Coast. The Ministry Agreement was negotiated and signed in the Ivory Coast, and required performance in the Ivory Coast.

■ Whether a statute may be applied beyond the borders of the United States depends upon congressional intent. Unless a contrary intent is evident, legislation is presumed to apply only within the territorial jurisdiction of the United States. *Foley Bros.,* 336 U.S. at 285, 69 S.Ct. at 577; *Blackmer v. United States,* 284 U.S. 421, 437, 52 S.Ct. 252, 254, 76 L.Ed. 375 (1932) (foreign service of· process on American citizens permitted). Because Congress is primarily concerned with domestic affairs, and does not wish to interfere with the sovereign right of a nation to regulate activities within its own borders, *see Foley Bros.,* 336 U.S. at 285–86, 69 S.Ct. at 577–78, this presumption has been invoked to prevent the extraterritorial application of civil rights laws. *See, e.g., Spotted Eagle v. Blackfeet Tribe,* 301 F.Supp. 85 (D.Mont. 1969) (American Indian sovereignty prevents application of § 1981); *Boureslan v. Aramco,* 892 F.2d 1271 (5th Cir.1990) (en banc) (Title VII); *DeYoreo v. Bell Helicopter Textron, Inc.,* 785 F.2d 1282, 1283 (5th Cir.1986) (ADEA prior to congressional

amendment (29 U.S.C. § 630(f)); *Jaffe v. Boyles,* 616 F.Supp. 1371 (W.D.N.Y.1985) (42 U.S.C. § 1983 claim cognizable upon entry into United States).

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts * * *.

42 U.S.C. § 1981. The plain language of § 1981 does not reveal any intent to extend extraterritorial coverage to victims of racial discrimination. "When it desires to do so, Congress knows how to place [an extraterritorial act] within the jurisdictional reach of a statute." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 109 S.Ct. 683, 691, 102 L.Ed.2d 818 (1989). Instead, the language of § 1981 doubly emphasizes territoriality: that "persons with the jurisdiction of the United States" maintain rights "in every State and Territory."

■ The legislative history of § 1981 also does not reflect an intent to extend rights beyond the territorial United States. The origins of § 1981 can be traced to both the Civil Rights Act of 1866 and the Voting Rights Act of 1870. *See Runyon v. McCrary,* 427 U.S. 160, 168 n. 8, 96 S.Ct. 2586, 2593 n. 8, 49 L.Ed.2d 415 (1976). The 1866 Act declared most persons born in the United States "citizens," and gave all citizens a wide range of enumerated rights. Act of April 9, 1866, ch. 31, 14 Stat. 27. The Voting Rights Act of 1870 extended many of the protections of the 1866 Act to noncitizens by substituting the term "persons" for "citizens." Act of May 31, 1870, ch. 114, 16 Stat. 140, 144. The 1870 amendment broadened the scope of the statute to include aliens, *Graham v. Richardson,* 403 U.S. 365, 377, 91 S.Ct. 1848, 1855, 29 L.Ed.2d 534 (1971), but did not alter the restriction to "every State or Territory."

■ Both the 1866 and 1870 Acts are legislative cousins of the Fourteenth Amendment. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 389, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982). Language similar in scope to that of § 1981 is found in the equal protection

clause of the Fourteenth Amendment: no state shall "deny to any *person within its jurisdiction* the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). This language solely refers to persons within United States territory. For example, while aliens are guaranteed equal protection within the territory of the United States, *see, e.g., Plyler v. Doe,* 457 U.S. 202, 215, 102 S.Ct. 2382, 2393, 72 L.Ed.2d 786 (1982) (illegal aliens); *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886) (resident aliens), the same protections do not extend beyond the border. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 390 (5th Cir.1983) (where overseas tort, 14th Amendment does not require to application of American law to foreign nationals as well as American citizens) (overruled on other grounds by *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147 (5th Cir.1987)).

Because § 1981 applies only to discrimination claims that arise within the territorial United States, plaintiffs fail to state a claim in Count I upon which relief can be granted. Defendants' alternate motion to dismiss, based on *Patterson v. McClean Credit Union,* 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), is moot.

■ In Count III of the complaint, plaintiffs allege a breach of the UCC's implied covenant of good faith and fair dealing. Iowa Code § 554.1203 (1989); *Nora Springs Coop. Co. v. Brandau,* 247 N.W.2d 744, 750 (Iowa 1976); *Steinmetz v. Bradbury Co.,* 618 F.2d 21, 25 (8th Cir. 1980). Defendants' contention that the UCC does not apply to the producer-distributor agreement is without merit. The contract clearly contemplates the sale of commercial seed from POC to Poulet d'Or. Producer–Distributor Agreement § B(3) ("POC may, at its option, require Poulet d'Or to purchase from POC * * * commercial seed"); § E(8)(c) (warranty on "commercial seed sold * * * to Poulet d'Or by POC"); Appendix C ("This remedy hereby provided shall be the exclusive and sole remedy of the Buyer and all other persons for any such loss"); Addendum No. 1 ¶ 2 ("Jerry has agreed to pay Pioneer

$2,700/T. and Pioneer has accepted."). Because the UCC applies to a contract for sale of commercial seed corn, defendants' motion to dismiss Count III will be denied. Iowa Code § 554.2106(1) (" 'contract for sale' includes both a present sale of goods and a contract to sell goods at a future time"); § 554.2204 (open terms acceptable); § 554.2311 (option contracts).

Defendants move to dismiss Count V as to Theus individually because the prospective business advantage inured solely to Poulet d'Or. On the face of the contractual agreements it is unclear whether Theus signed in his personal capacity, and/or in his capacity as agent for Poulet d'Or. Therefore, defendants' motion will be denied.

■ Finally, defendants move to dismiss plaintiffs' Count VI because Iowa does not recognize an affirmative cause of action for duress. Duress is an equitable claim used to avoid an agreement. *Turner v. Low Rent Hous. Agency,* 387 N.W.2d 596, 598 (Iowa 1986) (quoting Restatement (Second) of Contracts § 175(1) (1981)); *see also* Iowa Code § 554.1103 (1989) (incorporating equitable principle of duress). Duress is not an affirmative cause of action for compensatory or punitive damages. *Smith v. Blakesburg Savings Bank,* 182 Iowa 1190, 164 N.W. 762, 764 (1917) ("Plaintiff has the right to pursue one of two remedies; that is, to bring a suit in equity to cancel and set aside the instrument upon the ground of fraud or duress, *or* an action at law for damages.") (emphasis added). Therefore, defendants' motion as to Count VI will be granted.

### RULING AND ORDER

Defendants' motions to dismiss counts I and VI are GRANTED.

Defendants' motions to dismiss counts III and V are DENIED.

IT IS ORDERED that counts I and VI of plaintiffs' complaint be DISMISSED.