**DP MARINA, LLC, Plaintiff,**

v.

**CITY OF CHATTANOOGA, TENNESSEE, Defendant.**

**Case No. 1:12–cv–218.**

United States District Court, E.D. Tennessee, at Chattanooga.

Signed Feb. 18, 2014.

---

James S. Whitlock, Davis & Whitlock, PC Asheville, NC, Gary A Davis, Gary A. Davis & Associates, Hot Springs, NC, for Plaintiff.

Adam G. Sowatzka, King & Spalding, LLP, Atlanta, GA, Michael A. McMahan, Office of the Chattanooga City Attorney, Patrick P. H. Bobo, Chattanooga, Valerie L. Malueg, Office of Chattanooga City Attorney, Chattanooga, TN, for Defendant.

### *ORDER*

HARRY S. MATTICE, JR., District Judge.

Before the Court is Defendant's renewed Motion for Judgment on the Pleadings. (Doc. 44). For the reasons stated herein, the Court will **GRANT** Defendant's Motion. Plaintiff's federal claims arising prior to July 17, 2012 will be **DISMISSED WITH PREJUDICE**; those federal claims arising after July 17, 2012 will be **DIS-**

MISSED WITHOUT PREJUDICE. The Court will also **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims.

## I. BACKGROUND

On October 13, 2010, a citizens' suit was instituted against the City of Chattanooga ("Defendant" or "the City") by the Tennessee Clean Water Network ("TCWN") alleging that the City had committed hundreds of violations of the Clean Water Act ("CWA") from January 2006 through June 2010. (E.D. Tenn. case no. 1:10-cv-281, Doc. 1) (hereinafter "TCWN case"). TCWN argued that the City's sewer system "regularly" overflowed "into the Tennessee River its tributaries, and into homes, business and streets" throughout this time period. (*Id.*).

On July 9, 2012, Plaintiff filed its initial Complaint in this action against Defendant, also bringing a citizen's suit pursuant to the Clean Water Act ("CWA") in order to address allegedly unlawful and/or unpermitted sewage and wastewater discharges into Browns Ferry Marina from the Tiftonia #1 Pump Station. (Doc. 1). Plaintiff's initial Complaint indicated three such discharges from August 5, 2010 through April 27, 2011. (*Id.*).

Subsequently, on July 17, 2012, the Environmental Protection Agency ("EPA") and the State of Tennessee (collectively, "the Government") brought suit against the City pursuant to the CWA for "discharges of pollutants" into the Tennessee River and its system of tributaries and basins from at least June 2007 through July 17, 2012. (E.D. Tenn. case no. 1:12-cv-245, Doc. 1) (hereinafter, "Government case"). The Complaint stated that "hundreds" of violations had occurred during this time period, but it did not contain specific dates or locations for the allegedly unlawful discharges. The Government sought monetary penalties as well as injunctive relief for the alleged violations and lodged a proposed consent decree with the Court. (*Id.*; Doc. 2). Pursuant to the Government's request, the Government case and the TCWN case were subsequently consolidated. (Government case, Doc. 5).

On April 24, 2013, after a period of public comment, United States District Judge Curtis L. Collier entered a Consent Decree and final judgment against the City in the consolidated case, providing for injunctive and remedial efforts to bring the City into compliance with the CWA over the course of several years, and imposing a $476,400.00 civil penalty against the City. (Government case, Doc. 12). The Consent Decree provided for additional monetary penalties in the event that the City fails to comply with various portions of the Decree.

The Consent Decree did not contain specific dates or locations for the allegedly unlawful discharges. It did, however, specifically address remedial and preventative efforts for pump stations in general, requiring the City to submit "a schedule for full implementation" of a pump stations operations program within 19 months of the entry of the Consent Decree; these proposals must include procedures and standards for both routine and emergency pump station operations, as well as for preventative maintenance. (*Id.* at 30–33, 52–53). Additionally, Appendix C to the Decree provided a list of "Early Action Capital Improvement Projects," which included monitoring and upgrades at the following pump stations: DuPont, Collegedale, East Brainerd, Altamont, Pineville, Citico CSOTF, Enterprise South Industrial Park, Orchard Knobb Sanitary, Friars Branch, and South Chickamauga.

The Consent Decree also contains a section titled "EFFECT OF SETTLE-

MENT/RESERVATION OF RIGHTS," which states

73. This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the Date of Lodging of this Consent Decree.

74. This Consent Decree also resolves the civil claims of the TCWN for the violations alleged, or that could have been alleged, in the TCWN Complaint filed in this action through the Date of Lodging of this Consent Decree. In addition, this Consent Decree resolves all civil claims of the TCWN for the penalties associated with any activity subject to a stipulated penalty under this Consent Decree.

. . .

79. This Consent Decree does not limit or affect the rights of any of the Parties against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Chattanooga, except as otherwise provided by law.

(*Id.* at 85–87).

Plaintiff in this action filed several motions to amend its Complaint in order to raise additional alleged violations; Defendant filed oppositions to the majority of those Motions, and filed a Motion for Judgment on the pleadings. On September 30, 2013, the Court entered an Order in this action granting Plaintiff's Fourth Motion to Amend and denying Defendant's Motion for Judgment on the Pleadings with leave to refile. (Doc. 37). In that Order, the Court found that the diligent prosecution bar of the Clean Water Act does not apply to the instant action, as Plaintiff initiated its citizen suit prior to the commencement of the government suit against the Defendant. (*Id.* at 9–10). The Court noted that neither party had provided sufficient briefing regarding the effect of the Consent Decree entered by Judge Collier in the Government action on April 24, 2013 and that it was not clear to the Court that the Decree would have a preclusive effect on Plaintiff's action. (*Id.* at 10–12).

On October 14, 2013, Plaintiff filed its Fifth Amended Complaint, alleging that Defendant discharged pollutants to surface waters without a NPDES permit (count 1), and/or violated the terms of NPDES permit No. TN 0024210 (count 2) on the following dates: August 5, 2010, April 1, 2011, April 27, 2011, December 11, 2011, December 12, 2011, January 27, 2012, January 29, 2012, January 30, 2012, November 1, 2012, January 17, 2013, March 24, 2013, May 5, 2013, July 6, 2013, and July 22, 2013. (Doc. 40 at 7–10). Plaintiff also asserted claims for private nuisance (count 3) and trespass (count 4). (*Id.* at 10–11).

On November 1, 2013, Defendant filed a renewed Motion for Judgment on the Pleadings. (Docs.44–45). Defendant argued that Plaintiff's federal claims are barred by the doctrine of res judicata and again argued that the diligent prosecution bar of the CWA applies to Plaintiff's claims. Defendant also argued that the Court should decline to exercise jurisdiction over Plaintiff's state law claims if the federal claims are dismissed; alternatively, Defendant argues that any of Plaintiff's state law claims arising more than one year prior to the initiation of the instant suit are barred by the TGTLA's one-year statute of limitations. Plaintiff responded in opposition to Defendant's Motion (Doc. 48), and Defendant then filed a Reply brief (Doc. 49).

## II. ANALYSIS

When a defendant moves for judgment on the pleadings, the Court must construe the complaint in the light most favorable to

the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007). The Court reviews a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same standards it applies to a Rule 12(b)(6) motion to dismiss. *See Heinrich v. Waiting Angels Adoption Svcs., Inc.*, 668 F.3d 393, 403 (6th Cir.2012) ("The manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6).") (quotation omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is not a challenge to the plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir.2010). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir.2007) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

### A. Federal CWA Claims

#### 1. Claims Arising Prior to July 17, 2012

The City's first argument is that all of the alleged violations of the CWA that occurred before July 17, 2012—the date of the filing of the Government case—are barred by the doctrine of res judicata or claim preclusion. (Doc. 45 at 12–15). It argues that the Consent Decree entered in the Government case was a final judgment that "expressly resolve[d] all violations of the [CWA by the City] that occurred between June 2007, and July 17, 2012"—that is, that Plaintiff's pre-decree violations "were actually litigated in the Government case." (*Id.* at 12). It further argues that the Government is in privity with the citizens they represent in a CWA enforcement action because citizens bringing suits pursuant to the CWA are acting as "private attorneys general ... on behalf of society as a whole." (*Id.* at 13).

In Response, Plaintiff argues that Defendant cannot demonstrate any of the elements for res judicata other than a final adjudication on the merits. (Doc. 48 at 2). Plaintiff argues that the pleadings do not demonstrate that its claims were litigated in the Government action or that there is an identity between the causes of action alleged in that case and the instant case. (*Id.* at 2–6). Specifically, Plaintiff argues that there is "no way to tell if the hundreds of overflows addressed in the [Government case] include the specific and particularized overflow set out in Plaintiff's Fifth Amended Complaint." (*Id.* at 2–6) (internal quotation marks omitted). Plaintiff argues that, even if its claims should have been litigated in that action, Defendant should have moved to consolidate the instant action with the Government case. (*Id.* at 2–3, 5–6). Plaintiff also argues that the governmental entities involved in the Government case were not a privy for Plaintiff in that litigation. (*Id.* at 6–11). Plaintiff argues that the filing of a *parens patriae* action by the Government is insufficient, standing alone, to establish privity between the parties; rather Plaintiff ar-

gues that this Court "must find that the government diligently prosecuted the same violations contained in Plaintiff's Fifth Amended Complaint" in order to find privity amongst the parties. (*Id.* at 6–9). Plaintiff argues that, even if the Consent Decree addressed Plaintiff's violations, the Government did not "diligently prosecute" its claims in that action, as the Decree is "vague and lacks in specifics when it comes to exactly how [the City] will achieve the purpose(s) of the Consent Decree," and contains no references to any actions that are to be taken at the Tiftonia #1 Pump Station, the pump station relevant to Plaintiff's claims. (*Id.* at 9–11).

In Reply, Defendant argues that the Government action did not have to provide specific dates and times of the violations addressed and covered within the scope of the Consent Decree in order for that Decree to have a preclusive effect on other alleged violations that occurred in the time period covered by the Decree. (Doc. 49 at 3–6). Defendant also argues that, even if Plaintiff's claims should have been consolidated with the Government action, Plaintiff had the ability to intervene in that action as a matter of right to ensure that its rights and interests were represented. (*Id.* at 6 n. 5). Defendant also argues that the issue of diligent prosecution has no role in the Court's analysis of privity between Plaintiff and the governmental plaintiffs that prosecuted the Government action. (*Id.* at 6–7).

▋ "The fundamental function of the doctrine of res judicata is to prevent the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy. The doctrine's objective is to give finality to prior judg-

ments and put an end to litigation." *Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1229 (6th Cir.1981). Res judicata is itself an affirmative defense, and the party urging it carries the burden of proof with respect to factual contentions that underlie the defense. *See Howard v. Green,* 555 F.2d 178, 181 (8th Cir.1977).

▋ The doctrine, also known as the law of prior judgments, consists of two related concepts: claim preclusion and issue preclusion. *Baker v. Gen. Motors Corp.,* 522 U.S. 222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Smith v. Dawson–Smith,* 111 Fed.Appx. 360, 362 (6th Cir. 2004).

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Claim preclusion consists of four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of actions."[1] *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 528 (6th Cir. 2006) (internal quotation marks omitted); *Doe ex rel. Doe v. Jackson Local Schools*

---

1. In the instant case, the parties do not dispute the fact that the Consent Decree and

Judgment entered in the Government case constitute a final decision on the merits.

*School Dist.*, 422 Fed.Appx. 497, 500 (6th Cir.2011) (citations and internal quotation marks omitted).

In *EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403–1405 (1990), the United States Court of Appeals for the Eighth Circuit considered the privity prong of the res judicata claim preclusion test in a circumstance almost identical to that before the Court in the instant action. The plaintiffs in *Green Forest* filed a CWA citizens' suit against the City of Green Forest; however, the EPA subsequently commenced its own action against the City, and a Consent Decree was ultimately entered as to the City's CWA violations. *Id.* at 1400. The district court then granted the City's motion for summary judgment as to plaintiffs' CWA claims, finding that they were barred by the doctrines of res judicata and collateral estoppel in light of the entry of the Consent Decree. *Id.* at 1400, 1403.

Although the plaintiffs conceded that the claims raised in its citizens' suit were the same as those raised by the government, the plaintiffs appealed, arguing that they never had a chance to present their CWA claims against the City. *Id.* at 1403. Plaintiffs essentially argued that the government was not their privy in that action, and that, because plaintiffs "were not involved in the action that resulted in the consent decree, they should not have been precluded from pursuing their CWA claims independently." *Id.* at 1403.

The Eight Circuit, however, affirmed the district court's finding that the CWA claims previously asserted in the citizens' suit were barred by the doctrine of res judicata once the Consent Decree was entered in the government's action against the City. *Id.* at 1403–1405. In doing so, the Eighth Circuit noted that the government has been granted a "preeminent role" in enforcing CWA violations, by Congress and the United States Supreme Court, and concluded that "[s]ince citizens suing under the CWA are cast in the role of private attorneys general, as a practical matter, there was little left to be done after the EPA stepped in and negotiated a consent decree." *Id.* at 1404; *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) ("If citizens could file suit, months or years later, in order to seek the civil penalties that the [Government] chose to forgo, then the [Government's] discretion to enforce the [CWA] in the public interest would be curtailed considerably."). The *Green Forest* court further held that the fact that these citizens filed suit prior to the commencement of an enforcement action by the government was of no consequence, as they were "no more aggrieved than citizens who are precluded from commencing an action in the first instance because of a pending agency action." *Id.; see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir.2004) (noting that, because citizens acting as private attorneys general "seek relief not on their own behalf but on behalf of society as a whole, ... personalized remedies are not a first priority[.]") While acknowledging that "there may be some cases in which it would be appropriate to let a citizens' action go forward in the wake of a subsequently-filed government enforcement action," the Eighth Circuit concluded that "this is not such a case" in light of the consent decree. *Green Forest*, 921 F.2d at 1404.

In its Response, Plaintiff points to several cases from other circuit and district courts which have applied different standards than the Eighth Circuit in determining whether the government is deemed to represent all citizens as a privy for res judicata purposes after the government files an enforcement suit under the CWA.

(Doc. 48 at 7). Plaintiff encourages this Court to adopt a "diligent prosecution" standard for assessing whether the government has privity with citizens bringing their own enforcement actions pursuant to the CWA. (*Id.* at 7–11).

The Court finds several problems with the diligent prosecution approach to the privity analysis, however. The government's "diligent prosecution" of a CWA action, pursuant to statute, is implicated only to the extent that it bars a citizen from commencing its own action.[2] Diligent prosecution contemplates action that is ongoing by the government, whereas the res judicata analysis in this context necessarily involves actions that have previously been taken by the government and have reached a final resolution on the merits. Thus, in order to apply the diligent prosecution standard in the context of the res judicata analysis, a district court would necessarily have to engage in a *post hoc* substantive analysis of the quantity and quality of the enforcement actions taken by the government in the prior case. The Court finds no place for such substantive second-guessing in the res judicata analysis, and thus rejects Plaintiff's request that it apply the diligent prosecution standard in assessing the government's privity to a plaintiff in a citizens' suit.[3]

▌ Instead, as noted by the Eighth Circuit in *Green Forest,* and by numerous other courts, a party who brings a citizens' suit pursuant to the CWA is acting in the role of a private attorney general, based on the government's lack of enforcement action, in order to vindicate the rights of society as a whole, rather than to vindicate his own private rights. Thus, the Court finds that, for the purposes of res judicata, the government is necessarily in privity with those plaintiffs bringing citizens' suit.

Plaintiff also disputes that its claims were litigated or should have been litigated in the prior action, and that its causes of action share an identity to those causes of action resolved in the Government case. In support, Plaintiff relies solely upon an unpublished 2004 opinion from the United States District Court for the Western District of Missouri. (Doc. 48 at 3–6) (citing *Citizens Legal Envtl. Action Network v. Premium Standard Farms, Inc.,* 2000 WL 220464 (W.D.Mo. Feb. 23, 2000)). The Court agrees that this case—albeit in no way binding on this Court—supports Plaintiff's position in that it finds that where a citizens' suit has described specific violations of the CWA, and the government has brought a broader enforcement action against the same violator, the claims in the citizens' suit will be barred by the entry of a consent decree only to the extent that the citizens' suit alleges "the precise violations described in the [government's] petition." *Citizens Legal,* 2000 WL 220464, at *7. The court in *Citizens Legal* specifically noted that the extent of the overlap between the government's complaint and the citizens' complaint was "not clear," as the state's petition con-

---

2. The citizen suit provision of the CWA provides in relevant part that

No action may be commenced ... if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b)(1)(B).

3. The Court also notes that, even if it were to adopt the diligent prosecution standard as a part of its res judicata analysis, it is unlikely that the Court would find that the Government's prosecution was not diligent since "diligence provisions are interpreted liberally to accord government agencies great latitude and discretion in the methods of compelling compliance." *See, e.g., Ellis,* 390 F.3d at 478.

tained "general" allegations regarding "numerous other fish kills and water pollution events," and concluded that it could not determine "which 'numerous' events are referred to, nor whether any of these are included in [the citizens' suit's] numerous allegations." *Id.* at *6 n. 7.

By contrast, Defendant urges the Court to find that *Ellis v. Gallatin Steel Co.,* 390 F.3d 461 (6th Cir.2004)—which would be binding on this Court if the factual and procedural circumstances were identical—specifically governs this dispute, because in that case, the United States Court of Appeals for the Sixth Circuit held that the consent decree entered into by the government and the defendant, by its own terms, included all claims through the date of its entry and was thus sufficient to "pick[ ] up" the citizen-plaintiffs' claims. (Doc. 49 at 3–4) (citing *Ellis,* 390 F.3d at 473). The Court, however, finds *Ellis* to be procedurally distinguishable from the instant case, in that the *Ellis* plaintiffs had intervened in, and were thus a party to, the prior government action, making the preclusive effect of the consent decree over them undisputable.

Nonetheless, the Court agrees with Defendant's argument that the claims resolved by the entry of the Consent Decree in the Government case share an identity with the causes of action raised in Plaintiff's citizens suit, and accordingly, that Plaintiff's claims either were, or should have been, litigated in that prior action. The Government sought and obtained a Consent Decree against Defendant in the Government action resolving, through monetary penalties and long-term preventative and rehabilitative efforts, Defendant's "hundreds" of unlawful discharges of pollutants into the Tennessee River and its tributaries and basins from June 2007 through July 17, 2012. The Consent Decree, along with the appendices attached and incorporated thereto, provides for the City to create a long-term plan for the operation and management of its pump stations and further provides for more immediate monitoring and upgrades at 10 specific pump stations. The CWA claims in Plaintiff's Fifth Amended Complaint describe eight specific unlawful discharges that occurred at the Tiftonia # 1 Pump Station during the period covered by the Consent Decree—that is, June 2007 through July 17, 2012.

Plaintiff's CWA claims overlap with those brought against Defendant in the Government action, as both cases sought injunctive and monetary relief for violations of the CWA that occurred during the same relevant time period. The proposed consent decree filed simultaneously with the Government's complaint clearly indicated that the Government intended to include pump station violations within the scope of its action. Although Plaintiff seeks to place the burden or blame on Defendant for not consolidating this action with the Government case, as the Government did for the TCWN case, Plaintiff fails to explain why *it* did not move for consolidation. Nor does Plaintiff provide any explanation as to why it did not seek to intervene as a matter of right in the Government action. 33 U.S.C. § 1365(b)(1)(B). Pursuing either of these courses of action would have given Plaintiff an opportunity to ensure that its specific complaints regarding the Tiftonia # 1 Pump Station were taken into consideration in the final Consent Decree and Judgment. Yet, as it stands, the Consent Decree in the Government case clearly provides for relief regarding discharges at the City's various pump stations (albeit providing no specific relief as to the Tiftonia # 1 Pump Station). This leads the Court to the conclusion that Plaintiff's claims—unlawful discharges from one of the City's many pump stations—were actu-

ally litigated in the Government case, and that to the extent that the specific relief sought by Plaintiff was not addressed or litigated, it could have been or should have been litigated in that action.[4]

The Court has found that all of the res judicata factors have been met and that all of Plaintiff's CWA claims arising prior to July 17, 2012 are barred by the April 2013 Consent Decree in the Government action. Thus, the Court will **GRANT** Defendant's Motion for Judgment on the Pleadings as to those claims, which will be **DISMISSED WITH PREJUDICE.**

*2. Claims Arising After July 17, 2012*

As to Plaintiff's claim arising after the effective date of the Consent Decree—that is, July 17, 2012—Defendant argues that these claims are barred by the diligent prosecution bar of the CWA. (Doc. 45 at 15–17). In Response, Plaintiff correctly notes that this Court found in its September 30, 2013 Order that the diligent prosecution bar does not apply to this action. (Doc. 48 at 11–13). Plaintiff argues that it did not need to file a new complaint "because Plaintiff had already filed suit before the government commenced its action." (*Id.* at 12). Plaintiff also argues that it "had no obligation to petition [the Government] to enforce the Consent Decree or ask that the Consent Decree be modified" and that taking such action "would have been futile given the vague nature of the Consent Decree and the fact that it provides for no specific relief for Plaintiff[.]" (*Id.*).

The City has once again argued that the diligent prosecution bar of 33 U.S.C. § 1365(b)(1)(B) applies to this action. The Court stated in its September 30, 2013 Order that

[T]he diligent prosecution bar does not apply to the instant action. Plaintiff initiated its citizen suit against Defendant in this Court on July 9, 2012. The EPA filed suit against Defendant on July 17, 2012. Because the Government did not "commence" its enforcement action against Defendant by filing a suit in federal or state court prior to the commencement of Plaintiff's instant action, Plaintiff's citizen suit cannot be barred by § 1365(b)(1)(B). Because this bar does not apply to Plaintiff's action, Defendant's Motion for Judgment on the Pleadings based on the application of § 1365(b)(1)(B) would be subject to denial.

(Doc. 37 at 9–10). Plaintiff did not "commence" a new citizens' suit against the City after the Government had commenced its diligent prosecution of CWA violations against the City; rather, Plaintiff merely amended its Complaint in this action, which was commenced prior to the Government's enforcement action, to add dates upon which the City allegedly committed additional violations of the CWA. None of the facts or arguments submitted by Defendant have persuaded the Court that its previous ruling regarding the inapplicability of the diligent prosecution bar was in

---

**4.** To be clear, the Court does not condone the sort of vague and all-encompassing language frequently used by governmental entities in their environmental enforcement suits. The Court agrees with the *Citizens Legal* court to the extent that such generalized allegations by the government alleging "numerous" or "hundreds" of discharges during a multi-year time period makes it difficult, if not impossible, for the Court and concerned citizens to determine the scope of such decrees. A small but concerted effort on the part of the government to engage in more specific drafting would aid in streamlining the government's enforcement efforts, putting citizens on notice as to what specific violations and/or locations are involved in a specific enforcement action, and would ultimately serve to eliminate complicated res judicata disputes, like those involved in this case.

error, and the Court will thus not revisit that ruling now.

Nonetheless, the Court finds adequate grounds upon which to grant Defendant's Motion for Judgment on the Pleadings as to Plaintiff's CWA claims arising after July 17, 2012. The Sixth Circuit's decision in *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir.2004), is instructive in the instant matter. In that case, a citizens' suit was commenced against two corporations for several violations of the Clean Air Act ("CAA") after the United States, through the EPA, commenced an enforcement action against the same defendants under the CAA.[5] *Id.* at 468. Subsequently, the government amended its complaint to add claims that "overlapped" with the claims in the citizens' suit and submitted a proposed consent decree for the resolution of these claims. *Id.* The plaintiffs in the citizens' suit were permitted to intervene in the government action, but shortly thereafter, the district court entered the consent decrees in the government's case. *Id.* The citizens' suit, however, continued. *Id.* at 468–69. Although the district court applied the doctrine of res judicata to conclude that the consent decrees operated as a bar as to the citizens' claims for all violations up to the date the court entered the decrees, it permitted the citizens' claims for injunctive relief post-dating the consent decrees to proceed to a bench trial. *Id.* at 469. Ultimately, the district court granted the citizen-plaintiffs' request for a permanent injunction, and the corporate defendants appealed that determination. *Id.* at 469, 474.

The Sixth Circuit reversed the district court's conclusion that the citizen-plaintiffs were entitled to seek relief in their pending citizens' suit for CAA claims that accrued after the date upon which the consent decrees were entered in the government case. *Id.* at 474–78. The Sixth Circuit first discussed the limited role of citizens' suits as a tool in environmental protection statutes, noting that they merely play an "interstitial" role and are authorized only where the government has failed to exercise its enforcement authority and that citizens are not permitted to seek "types of relief that the government chose to forgo." *Id.* at 475 (quoting *Gwaltney*, 484 U.S. at 60–61, 108 S.Ct. 376, and citing *Atlantic States Legal Found. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir.1991)) (alteration and internal quotation marks omitted).

Then, turning to the dispute before it, the Sixth Circuit found several defects in the citizen-plaintiffs' post-decree violation claims. First, the court noted that the plaintiffs were unable to satisfy the standard for obtaining an injunction, as they did not demonstrate that the consent decrees failed to "adequately deal" with their CAA claims so as to show that they were at risk of continuing irreparable injury. *Id.* at 475–76. Specifically, the court noted that (1) the decrees were forward-looking and applied to "continuing violations" of the CAA, for both injunctive purposes and imposition of monetary penalties; (2) the decrees were only three months old at the time the district court entered the injunction and had thus not had time to be fully implemented; and (3) plaintiffs failed to demonstrate that the EPA had actually failed to enforce the decrees. *Id.* at 476.

Next, the court noted that plaintiffs had failed to comply with "the traditional requirements for commencing an action regarding new claims—60–day notice and a showing . . . that the government is not

---

5. Although the government was the first to file an enforcement action, the plaintiffs bringing the citizens' suit in *Ellis* filed their 60–day notice with the government prior to the commencement of the government's case. *Ellis*, 390 F.3d at 467.

diligently prosecuting the action." *Id.* at 476. The Court concluded that citizens "must notify the EPA before commencing an action that turns on the alleged inadequacy (or alleged under-enforcement) of a consent decree proposed by and negotiated by that very agency." *Id.*

Finally, the Sixth Circuit noted that its determination that the district court was in error hinged most importantly on the fact that citizens at issue "are not without federal remedy." *Id.* at 477. The court laid out three specific avenues of relief that the citizen-plaintiffs could have pursued: (1) petition the government for enforcement of the consent decrees; (2) petition the government or the court for modification of the consent decrees; or (3) file a new lawsuit after complying with the notice requirements. *Id.* The Sixth Circuit noted that the plaintiffs' attempt to obtain more stringent relief than that worked out by the EPA constituted "second-guessing of the EPA's assessment of an appropriate remedy" and "fail[ed] to respect the statute's careful distribution of enforcement authority among the federal EPA, the States, and private citizens," and concluded that the one avenue of relief not available to plaintiffs was to "wait until the EPA ha[d] resolved its own claims against the polluter, then obtain stricter enforcement than the Government negotiated." *Id.* at 477, 478.

Plaintiff argues that *Ellis* is inapposite, as they complied with the 60–day notice provision of the CWA, whereas the *Ellis* citizen-plaintiffs did not, and because the *Ellis* citizen-plaintiffs did not file suit before the government, whereas Plaintiff did. While the Sixth Circuit discussed the importance of the notice provisions and the plaintiffs' lack of compliance with the notice provisions in that case, its holding did

not expressly rely upon the fact that the plaintiffs failed to submit the required notice. Nor did the court's holding as to this issue address, either explicitly or implicitly, the fact that the citizen-plaintiffs were not the first to file suit.

The Court acknowledges that there are certainly factual distinctions between *Ellis* and the instant case; nonetheless, the Court finds that the Sixth Circuit's ultimate conclusions regarding the avenues of relief available to citizens are applicable here. While the court noted that appropriate notice would be required to institute a new lawsuit for the post-decree violations, the court did not state or even suggest that the citizen-plaintiffs would have been entitled to maintain their claims for post-decree violations in their existing citizens' suit had they properly given the government notice of its intent to sue for those violations. Instead, the court suggested that any such new claims should be brought in a new lawsuit and should be based on a 60–day notice which would adequately warn the government that the suit was based on "the alleged inadequacy (or alleged under-enforcement) of [the] consent decree proposed by and negotiated by" the government.

The court expressly noted in *Ellis* that the plaintiffs had three specific avenues of relief that they could pursue for the alleged post-decree violations: (1) seek enforcement of the consent decrees; (2) seek modification of the consent decree; or (3) file a new lawsuit. The Court finds that *Ellis* stands for the proposition that these are the only methods of relief are available to citizen-plaintiffs in the wake of a valid consent decree for violations of the CAA or CWA that fall within the scope of relief provided for in the decree.[6]

---

**6.** This is consistent with the purpose of the citizens' suit statute, which provides great

deference to the government in commencing enforcement actions and in drafting and pro-

■ Here, although Plaintiff complied with the CWA's notice provisions, it nonetheless failed to put the government on notice that it would seek to challenge the adequacy or enforcement of a valid consent decree and failed to seek an appropriate avenue for relief for its post-decree CWA claims. Because Plaintiff cannot, based on binding Sixth Circuit precedent, pursue its post-decree violations in its pre-existing citizens' suit, the Court must **GRANT** Defendant's Motion for Judgment on the Pleadings as to those claims. However, because *Ellis* does not preclude Plaintiff from bringing its claims arising after July 17, 2012 in a new citizens' suit, the Court will **DISMISS** these claims **WITHOUT PREJUDICE.**

### B. State Law Claims

The Court has now determined that all of Plaintiff's federal claims should be dismissed. When a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c)(3). Generally, "if the federal claims are dismissed before trial, the state claims should be dismissed as well." *Harper v. AutoAlliance Int'l*, 392 F.3d 195, 210 (6th Cir.2004) (citation and quotation omitted). Because all federal claims have been dismissed and the parties are non-diverse, the basis for the Court's original jurisdiction is extinguished. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims; accordingly, Counts Three and Four will be **DISMISSED WITHOUT PREJUDICE.**

### III. CONCLUSION

Accordingly, and for the reasons stated herein,

- Defendant's Motion for Judgment on the Pleadings (Doc. 44) is hereby **GRANTED;**

- Plaintiff's federal claims arising prior to July 17, 2012 are **DISMISSED WITH PREJUDICE;**

- Plaintiff's federal claims arising after July 17, 2012 are **DISMISSED WITHOUT PREJUDICE;**

- Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

---

posing appropriate remedies. Requiring plaintiffs to commence a new lawsuit for post-decree violations, rather than piggy-backing those additional claims on to an existing citizens' suit, places the burden back onto the plaintiffs to make a showing that they have provided the government with an appropriate 60–day notice and to demonstrate that the government is not diligently prosecuting the alleged violations. In a case such as this one, the filing of a new suit would thus not only require Plaintiff to demonstrate that it complied with the notice provisions as set forth in *Ellis*, but would also require Plaintiff to show either that the remedies and penalties set forth in the Consent Decree for future violations are so inadequately drafted or enforced that they cannot possibly constitute diligent prosecution for the post-decree violations or that the new violations fall wholly outside of the scope of the original decree. Such a requirement protects the government from unnecessary intrusion into its delegated enforcement authority, while also allowing citizen-plaintiffs a meaningful method to challenge the ineffective use of such authority.